Argued April 21; modified May 19; rehearing denied June 23, 1936

# NIEDERMEYER, INC., v. FEHL ET AL.

(57 P. (2d) 1086)

*Geo. A. Rhoten,* of Salem, and *H. V. Schmalz,* of Burns, for appellant.

*G. M. Roberts,* of Medford (Wm. M. McAllister, of Medford, on the brief), for respondent Niedermeyer, Inc.

*E. E. Kelly,* of Medford, for respondents E. E. and E. C. Kelly.

*T. J. Enright,* of Medford, for respondents J. B. and Nora L. Thomas.

*G. W. Neilson,* of Medford (G. A. Codding, of Medford, on the brief), for respondent Jackson county.

■ BEAN, J. The plaintiff Niedermeyer, Inc., was in the possession of a fund, which, according to the opinions of the supreme court, it was its duty to return to the parties entitled thereto. To this fund numerous conflicting claims were being asserted, and it was impossible for plaintiff to determine with safety to whom this money should be paid. The plaintiff was clearly entitled to institute this interpleader suit: 33 C. J. 424 to 446; 15 R. C. L. 222, et seq.; *Pope v. Ames,* 20 Or. 199 (25 P. 393); *North Pac. Lbr. Co. v. Lang,* 28 Or. 246 (42 P. 799, 52 Am. St. Rep. 780); *McFadden v. Swinerton,* 36 Or. 336 (59 P. 816, 62 P. 12); *New Amsterdam Casualty Co. v. Hyde,* 148 Or. 229 (34 P. (2d) 930, 35 P. (2d) 980).

It is first contended by defendants Fehl that a bill of interpleader does not lie. It is stated in 33 C. J. 427, as follows:

"Where two or more persons severally claim under different titles, derived from a common source, the same debt or thing from another who, not claiming any title or interest therein himself, and not under independent liability to either of the claimants, and not knowing to which of the claimants he ought of right to render the debt or duty claimed, or to deliver the property in his custody, is either molested by an action or actions brought against him or fears that he

may suffer injury from the conflicting claims of the parties, such debtor or person in possession is entitled to the remedy of interpleader."

■ Plaintiff claims, and is entitled in equity to, reasonable attorneys' fees in this suit. The complaint filed by plaintiff is good either as a pure bill of interpleader or it is certainly good in the nature of a bill of interpleader and shows an equity entitling the plaintiff to relief. Plaintiff claims no interest in the fund involved. It appears that it is now and has been, since it offered to tender the money into court, willing at all times to pay the fund involved to whomever it rightfully belonged, as soon as the plaintiff could safely do so. Its acts in regard to the repayment of the funds, which were received upon the erroneous sale of the real estate, have been at all times free and above board. It is not, on the part of Niedermeyer, Inc., like a contested suit, but the filing of the complaint and presenting a portion of the record necessarily devolved upon plaintiff, as well as taking the cross-appeal, filing brief and presenting the case to this court.

The testimony shows that the sum of $500 is reasonable as attorneys' fees. We fix the attorneys' fees for plaintiff at $500, which should first be paid, together with plaintiff's costs and disbursements, from the fund in question: *Thos. Kay Woolen Mill Co. v. Sprague*, 259 F. 338; *North Pac. Lbr. Co. v. Lang*, supra; *Baker L. & T. Co. v. Portland Cattle Loan Co.*, 141 Or. 524 (6 P. (2d) 36, 18 P. (2d) 599); *First Nat. Bank v. Reynolds* (127 Me. 340 (143 Atl. 266, 60 A. L. R. 712).

■ Plaintiff claims that it should not be required to pay interest upon the fund after the date of the filing

of this suit. John Niedermeyer, secretary and manager of plaintiff corporation, testified that at all times since the institution of this suit the plaintiff was ready, able and willing to pay whatever amount the court determined to whoever was entitled thereto. His testimony was not contradicted. See 15 R. C. L. 34, § 31; 26 R. C. L. 625, § 4. It was not the fault of Niedermeyer, Inc., which caused delay in the determination of the matter as to who should receive the money, and it is only equitable that plaintiff should not be required to pay interest during the pendency of this suit.

### Claim of Kelly and Kelly

■■ The respondents Kelly and Kelly performed various legal services for the appellant Fehl. At the time the decree in the lower court was entered, Fehl was practically a bankrupt and without funds. Roy M. Parr obtained a judgment for $15,000 against Fehl in a libel suit, and this judgment creditor had attached all of Fehl's salary warrants as county judge. Whatever income he had coming by way of rentals had been assigned to his mother-in-law, Corinthia E. Stailey, one of the appellants. He was unable to procure a supersedeas bond and filed a cost bond only upon the appeal. Prior to the service of notice of appeal the building in question was sold under execution upon a judgment of foreclosure of Niedermeyer, Inc. Fehl at that time, by reason of his financial condition, was unable to procure a transcript of the testimony in the lower court. His various letters filed in this case indicate his financial condition and his promises to pay respondents Kelly and Kelly for their services on the appeal, and he acknowledged that the amount claimed was reasonable.

Section 32-303, Oregon Code 1930, provides:

"An attorney has a lien for his compensation, whether specially agreed upon or implied, as provided in this section,—

         \*       \*       \*       \*       \*

■ Upon a judgment or decree to the extent of the costs included therein, or if there be a special agreement to the extent of the compensation specially agreed on, from the giving notice thereof to the party against whom the judgment or decree is given, and filing the original with the clerk where such judgment or decree is entered and docketed." See *Scott v. Kirtley,* 113 Fla. 637 (152 So. 721, 93 A. L. R. 661).

In *Stoddard v. Lord,* 36 Or. 412 (59 P. 710), it was held that an attorney's lien served and filed upon an action at law attaches to a decree in supplemental proceedings without notice being served and filed in connection with such decree.

The question to be determined is, was the fund recovered by the labor and skill of the attorneys Kelly and Kelly? The form or condition of the decree or judgment is not material. This is a suit in equity, and equity will consider that done which ought to have been done, and will consider the fund in question the same as though the mandate of this court had been regularly entered and the decree carried out by a regular entry of a proper judgment and decree in the circuit court.

At the time the foreclosure decree was rendered in the circuit court and defendant Fehl solicited Kelly and Kelly to appeal the case, he became responsible to them for their labor and skill. The money which had been paid to Niedermeyer, Inc., under the decree of foreclosure was recovered back upon the appeal. The decision was to the effect that the defendant Fehl was entitled to restitution. There is no dispute but

that Niedermeyer, Inc., should restore the funds in question to the Fehls, or those claiming through them.

We read in Weeks on Attorneys at Law (2d Ed.) 746, § 370, as follows:

"Under the common law in England, an attorney or solicitor is entitled to recover his taxable costs from a fund recovered by his aid, both in legal and equitable proceedings. The lien attaches on the fruits of a judgment or decree. It attaches to the money payable to the client thereunder, or by virtue of an award, and to money paid or payable into court in the course of an action or suit, or in any other way, if the proceeds of the labor and skill of an attorney. The lien has been held to attach on sums received or payable by way of compromise, to the client in a cause, even where the verdict and judgment are against him; for the money is regarded as the fruit of the attorney's labor and skill, especially if he has taken up the cause of a poor person.

"In the United States, the doctrine of the 'charging lien' of the attorney appears to have been pushed in some courts quite as far as in England. The United States Supreme Court has decided that an attorney employed to prosecute a claim before a commission for a contingent fee of five per cent. had a lien for this amount on the fund recovered, and such a one as the court would enforce by a bill in equity.

"In several State courts, the lien has been held to cover, not merely costs and advances, but fees. In some States, the lien is regulated by statute. In others, the lien is totally denied; but the lawyer has a right to deduct from funds in his hands."

An attorney has a lien upon a sum awarded in favor of his client, as well as if recovered by judgment. Weeks on Attorneys at Law, (2d Ed.) § 384.

CLAIM OF JACKSON COUNTY

■ The judgment in favor of Jackson county against Earl H. Fehl for costs in the criminal action was duly

filed in the circuit court prior to the time the interpleader was at issue. The county filed its answer and cross-complaint claiming a lien for the costs.

In all cases of commission or attempt to commit a felony, the state has a lien, from the time of such commission or attempt, upon all the property of defendant, both real and personal, for the purpose of satisfying any judgment which may be given against him for any fine on account thereof, and for the costs and disbursements in the proceedings against him for such crime: § 14-1019, Oregon Code 1930; *Knott v. Shaw,* 5 Or. 482; *State v. Munds,* 7 Or. 80.

The county is entitled to enforce the lien on the personal property, namely, the fund involved, against the defendant Fehl, for its judgment for its costs in the criminal action, and the judgment and decree of the circuit court in regard thereto is affirmed, except as herein stated.

### CLAIM OF MRS. ELECTA A. FEHL

██ In her answer Mrs. Electa A. Fehl made no personal claim to the funds in question, but now for the first time comes into court claiming an interest in the judgment against Niedermeyer, Inc. A defense which is personal and single as to each defendant should be pleaded specially and not jointly: 49 C. J. 208, §§ 240 to 243. It is true that Mrs. Fehl was a party to the original foreclosure suit of Niedermeyer, Inc. The record shows that the mortgaged property was deeded to Earl H. Fehl and not to Fehl and wife jointly, so that Mrs. Fehl's interest in the property could have been only a dower interest which Mrs. Fehl barred by joining in the mortgage conveyance which was foreclosed. The fund in question originated in the mort-

gage transaction, the mortgage being executed by Earl
H. Fehl and Electa A. Fehl, his wife, which was held
and foreclosed by Niedermeyer, Inc., and embraced the
real estate which was owned by Fehl. The mortgage
was foreclosed and a decree regularly rendered by the
circuit court and the real estate embraced therein was
sold upon execution to the Thomases and Heimroth.
A sheriff's certificate of sale was issued to them and in
due time a sheriff's deed of the real estate was exe-
cuted and delivered to them. They took possession and
improved and rented the real estate. We mention the
real estate not for the purpose of passing on the title
but only as bearing upon the fund in question. Upon
appeal to this court the decree of foreclosure was
reversed. Therefore, it was necessary for Niedermeyer,
Inc., to make restitution of the proceeds of the real
estate which it had received and the question herein is
to whom should the money be paid. The proceeds of the
sale are in the same condition, as we view it, as though
Earl H. Fehl had sold and conveyed the real estate,
his wife joining in the deed, and the proceeds of the sale
had been placed in the hands of Niedermeyer, Inc. Mrs.
Fehl, having relinquished her right of dower in the
real estate, is not entitled to any dower right. The
fund is subject to any valid lien against Earl H. Fehl.
The Thomases and Heimroth now hold a deed to the
real estate, claiming the same under the rule which is
stated in 23 C. J. 771, § 822, as follows:

"The title of a bona fide purchaser who is a stranger
to the suit, and who purchases before an appeal is
taken and before the judgment is superseded or sus-
pended by giving a bond, is not impaired by the subse-
quent reversal of the judgment on appeal or its being
set aside by the trial court on grounds which do not
render the judgment absolutely void, * * *."

The restitution to be made by Niedermeyer, Inc., should be made to Earl H. Fehl or those claiming through him, except, in addition to the money borrowed from Thomases and Heimroth on the claim of the real estate sold on execution, Mrs. Fehl furnished $72.43 of her own money, which, in equity, should be paid to Mrs. Fehl together with interest thereon from January 7, 1933, to November 16, 1934, amounting to $8.06, although the briefs of appellants mention the money paid to Niedermeyer, Inc., as all having been furnished by the Thomases and Heimroth. Mrs. Fehl is not entitled to any other portion of the fund in question, she having relinquished her right of dower by joining in the mortgage.

### CLAIM OF DEFENDANT CORINTHIA E. STAILEY

■ Defendant Corinthia E. Stailey sets up a claim by virtue of the sale upon execution issued on the Parr judgment of some of the Fehl real estate. That matter is not involved in this suit and the court correctly determined that she was not entitled to any portion of the fund in question.

Defendants J. B. Thomas, Nora L. Thomas and J. T. Enright took no appeal. While they filed briefs making claims, they are presumed to be satisfied with the decree of the lower court; hence their claims need no further consideration.

There is considerable said in the briefs in regard to different conveyances of the Fehl real estate, but the title to the real estate is not involved in this case, and these matters need no consideration.

Respondents Kelly and Kelly ask for 10 per cent damages on account of this appeal. The suit is very

complicated and we are not able to say that the appeal was wrongfully taken so as to award such damages.

The decree of the lower court will be modified so as to be as follows: Plaintiff Niedermeyer, Inc., shall pay to the clerk of the circuit court the sum of $5,970.29, and shall thereby be relieved and discharged from any liability arising out of said suit on foreclosure, and by reason of any decrees rendered in said suit for foreclosure or any sales of any property made upon execution issued upon such decrees by reason of the reversal of the decree of the lower court in said foreclosure suit; that out of said fund so deposited in said court there shall be paid by said clerk the following sums and amounts to the following persons and in the following order of priority, to wit: (1) The amount of plaintiff's attorneys' fees, $500, and costs and disbursements; (2) The sum of $2,000 to defendants and respondents Kelly and Kelly, together with their costs and disbursements herein; (3) To Mrs. Electa A. Fehl the sum of $80.49. This change in the decree being so small, it will not entitle Mrs. Fehl to costs or disbursements; (4) The amount of the judgment of Jackson county, Oregon, based upon said conviction of said defendant Earl H. Fehl for costs in the sum of $3,962.35 and its costs and disbursements herein, to the extent of said balance remaining in the hands of the said clerk for disbursement. No costs or disbursements shall be awarded to any of the parties except as above specified.

RAND and BAILEY, JJ., not sitting.

KELLY, J. (concurring in part and dissenting in part). This proceeding is in the nature of a suit in interpleader to determine the ownership of a sum of money in the hands of plaintiff.

I concur in the determination of the respective rights thereto, as stated in the opinion of the court, except as to the claims of Jackson county and Mrs. Electa A. Fehl.

I am unable to concur in the statement that the fund in question originated in the mortgage of Niedermeyer, Inc., upon the real estate owned by Fehl. That mortgage had been paid before its attempted assignment to Niedermeyer, Inc., and, of course, before its attempted foreclosure. At all times subsequent to its full payment, it was *functus*; and, in my opinion, there is nothing in the record which ought to have the effect of depriving the Fehls of the right to challenge the validity of the foreclosure proceedings.

"The payment of a mortgage extinguishes the power of sale contained in it, if a statutory foreclosure is conducted thereafter, a *bona fide* purchaser at the sale will acquire no title in the premises." Vol. 2, Wiltsie on Mortgage Foreclosure (3 Ed.) p. 1290, § 915, note 21 citing *Cameron v. Irwin,* 5 Hill (N. Y. 272 and *Warner v. Clakeman,* 36 Barb. (N. Y.) 501, Aff'd. 4 Keyes (N. Y.) 487.

*Cameron v. Irwin,* supra, declares the principle announced in the text as above quoted.

*Warner v. Blakeman,* supra, contains the following comment:

"But it is said by Cowen, J. in Cameron v. Irwin, that payment extinguishes the power of sale, and the case becomes the same as if none had ever been inserted in the mortgage, and that the mortgage 'ceases to operate either at law or in equity, and the whole title reverts in the mortgagor.' * * * 'To call it a mortgage would be an abuse of the word. It is no more than a blank. It cannot be that a naked foreclosure by advertisement shall take away a man's farm.' All this would

674

be the undeniable conclusion, if the mortgagor was in a position to dispute the sale. It certainly is not true, when the mortgagor looks on, and without objection, sees his farm sold to a *bona fide* purchaser under a written power of sale in a mortgage which he knows is satisfied. Nor can the mortgagor be heard to allege payment of the mortgage when he has consented to its foreclosure. If, however, the foreclosure takes place without notice to him, or without his fault, after payment of the mortgage debt, the rule would doubtless be applied as rigidly as contended for by the learned judge in Cameron v. Irwin.''

In the case at bar, the mortgagors did not consent to the attempted foreclosure but contested it at every step, unless the successful efforts of Mrs. Fehl to hold the matter in abeyance by advancing $72.43 and executing her promissory notes to the purchasers and the placing in escrow of the certificate of sale can be construed as such consent.

As I view it, this fund originated in real estate owned by Mr. Fehl in which Mrs. Fehl had an inchoate right of dower and hence I think that, except as to the purchasers, the rights to the fund are those which the respective parties would have had respectively in and to the real property if the fund had not been created, augmented by such sums of money as were contributed to the fund.

Upon reversal of the pseudo foreclosure decree, the parties became entitled to be restored to their former rights as nearly as possible: *Thompson v. Davis,* 297 Ill. 11 (130 N. E. 455).

The foreclosure proceedings might well have been entirely set aside, because when the supposed sale of property was made the purchasers in making their bids were fully apprised of the claims of the Fehls and were

acting in accordance with that knowledge. If this had been done, the fund would have been returned to the purchaser, the notes, executed by Mrs. Fehl, would have been returned to her, the certificates of sale, placed in escrow with the county treasurer, would have been cancelled, and the title to the real property would have remained as above stated subject to the valid liens thereon. Jackson county would have had a lien upon Mr. Fehl's interest in the real estate, but no claim whatever upon Mrs. Fehl's dower right therein: 19 C. J. Subject: Dower, p. 520, § 173, notes 83 and 84.

Without in the least impugning the motives of any one, I think the mortgage had no existence in equity when it was attempted to be assigned to plaintiff and none when the foreclosure proceedings were instituted or at any time thereafter. The entry of the decree of foreclosure was a mistake. It could not affect Mrs. Fehl's dower interest in such a way as to subject it to the lien of Jackson county. The execution by Mrs. Fehl of the notes, by means of which she procured the money used, as stated in the opinion, to bid in the property at the purported foreclosure sale and the placing in escrow of the purported certificate of sale, in my view, could not have the effect of enlarging the scope of Jackson county's lien or of transferring Mrs. Fehl's interest in the fund to Mr. Fehl. As I view it, the purpose of this course was to preserve the corpus in *statu quo* until the respective rights therein could be determined in court.

It is manifest that the Fehls were unable to procure a supersedeas bond on appeal; but by the advancement of a comparatively small sum of money and the execution of her notes as stated Mrs. Fehl brought about a result tantamount to that which would have ensued

if such a bond had been given. My conception of the equities, thus created, causes me to believe that, as nearly as possible, we should protect her rights as they existed before the institution of the unwarranted foreclosure proceedings. In doing this, there need be no diminution of Jackson county's lien against Mr. Fehl's property.

The property of the Fehls was being subjected to an unwarranted foreclosure, the husband was being prosecuted, and, pending the appeal, was convicted, and the Fehls were unable to secure a supersedeas bond. These circumstances were so coercive in their nature that I think they justify the application of equitable restraint preventing a forfeiture of Mrs. Fehl's dower interest.

Jackson county, in its brief, does not dispute the existence of the right of dower on the part of Mrs. Fehl. I quote from that brief:

"It is true that Mrs. Fehl was a party to the original foreclosure suit of Niedermeyer Inc., but the record shows (Defendant Stailey, Page 198 of the transcript of testimony) that the property was deeded to Earl H. Fehl and not to Fehl and wife jointly, so that *Mrs. Fehl's interest in the property could only have been a dower interest.*" (Italics supplied.)

It is true that Jackson county urges, and the opinion of the court holds, that Mrs. Fehl should have set her interest out in a separate answer, and that it is too late now to urge any such interest. I am unwilling to approve such a narrow and restricted procedure in the light of this entire record.

Under the somewhat unusual state of the record, wherein it appears that the trial court failed to follow the mandate of this court or make any other final

disposition of the former case, I think the pleadings should be liberally construed to the end that justice may be done without further delay. It is that thought which prompts me to concur in the opinion of the court upholding the maintenance of this proceeding.

By thus approving the exercise of jurisdiction over the fund in suit it devolves upon this court to construe the record, either as having the effect of a ratification by Mr. and Mrs. Fehl of the sale on foreclosure and a waiver of their right to a restoration of their property or its equivalent or merely as having the effect of creating a fund to which the principle of equitable conversion should apply and in the distribution of which, as nearly as possible, the parties should participate in accordance with their respective interests in, rights to and liens upon the real estate as those interests, rights and liens would have existed and accrued if no attempt had been made to foreclose the paid-up mortgage.

With due respect for the opinion of the court and the able, experienced and learned jurist who wrote it, I can not concur in adopting the first of these two alternatives. I think that the latter alternative is more consonant with recognized principles of equity and justice.

In their brief, the Fehls contend that by reason of the fact that the fund was obtained upon the credit of Mrs. Fehl, as evidenced by her promissory notes, as well as upon the real property, in which she had a dower interest, Mrs. Fehl would be entitled to such a part of the fund as would adequately represent the value not only of her inchoate right of dower but of her promissory notes and the money she contributed. While I

recognize the force of this argument, I am of the opinion that the value of her inchoate right of dower and the $72.43 she advanced in money constitute the extent of her interest in the fund.

"The inchoate right of dower is more or less valuable according to the relative ages, constitution and habits of the husband and wife. Established mortality tables may be used in estimating the value of the inchoate dower interests of a wife in her husband's lands. In addition to the use of mortality tables, it is competent to show the age, health and habits of both husband and wife." 19 C. J. Subject: Dower, p. 494, § 107.

Mr. and Mrs. Fehl have contended that the present suit could not be maintained. They have argued, and I think with much cogency, that the mandate of the supreme court in the foreclosure suit should have been observed directing the entry of an appropriate judgment and decree against plaintiff and that such procedure only was proper. This contention, in my opinion, did not dissipate or lessen the right of Mrs. Fehl to participate in the fund in suit to the extent of the value of her dower and the money which she advanced toward such fund.

Except as to the extinguishment of the interest represented by the value of Mrs. Fehl's inchoate right of dower in the fund in favor of Jackson county's judgment against Fehl alone, I concur in the opinion of the court.