118 So.2d 763

Hunt C. HUGHES

v.

FIRST NATIONAL BANK OF MOBILE.

1 Div. 657.

Supreme Court of Alabama.

March 10, 1960.

———◆———

Caffey, Gallalee & Caffey, Mobile, for appellant.

Hand, Arendall & Bedsole, Mobile, for appellee.

MERRILL, Justice.

This case was originally assigned to another member of the Court, but was transferred to the writer on January 11, 1960.

Mrs. Hattie T. Hughes was hospitalized in Mobile in February, 1947, with a heart condition from which she never recovered, and was bedridden until her death on August 18, 1947. She had been alienated from her son, appellant Hunt C. Hughes, for many years. He had left home at seventeen years of age, spent a week in Mobile with his mother in 1918 when he was twenty-five, saw her in 1929 when she visited him at his home in Missouri, and next saw her in the hospital in Mobile in May, 1947.

On May 14, 1947, he became a joint signatory with his mother on her checking account in The First National Bank of Mobile, appellee, and two days later to her savings account in said bank.

On the same day of Hattie Hughes' death, an attorney representing decedent's estate put the appellee on notice that these funds, totaling $10,337.40, were claimed by persons other than appellant by virtue of a written instrument she had executed in the presence of witnesses and deposited in the safe at the hospital.

On the following day, August 19, through an admitted error on the part of one of appellee's officers who had not been notified of this claim to the money in question, appellant was permitted to utilize $9,000 of this fund for the purchase of two drafts drawn on a New York bank. As soon as the mistake was discovered, appellant was notified by telephone and payment was stopped on the drafts. Two days later, on

August 21, the original bill was filed by the special administrator of the estate of Hattie T. Hughes, for the purpose of restraining appellee from paying out any money pending a hearing on the bill. A temporary restraining order was issued. The bill alleged in part:

"That the provisions of said joint tenancy contract and said signature cards to the contrary notwithstanding, the said Hattie T. Hughes did not intend to vest title in said property and monies in said Hunt C. Hughes absolutely and in his own right nor to effect a disposition of said monies and property in the event of her death to Hunt C. Hughes in his own right, but on the contrary the purpose of said arrangements were to permit the said Hunt C. Hughes to pay from the property and monies of said Hattie T. Hughes, the medical, hospital and other expenses of the said Hattie T. Hughes, she being then a patient in Mobile Hospital, there confined from illness with considerable expenses for nurses, etc."

On the same day the bill was filed, appellant demanded the money from appellee. He was again informed of the conflicting claims and appellee "offered to turn over to Mr. Hughes the money and property, provided he would indemnify the Bank against any loss on account of doing so." Appellant, through his attorney, advised that this would not be done.

After appellant filed an appearance on September 5, appellee, on September 11, filed an answer and cross-bill in the nature of an interpleader against the special administrator and appellant, alleging that appellee claimed no right, title or interest in the money, except to the extent that it might be required to honor or pay the drafts totaling $9,000; that both the special administrator and appellant had separately demanded the possession of the money and appellee was desirous of disposing of the money and was ready, able and willing to dispose of it under the orders of the court; that it tendered all of the money with the exception of the $9,000,

which it offered to pay into court upon the surrender of the two drafts by appellant.

On October 6, 1947, the injunction was granted and the special administrator and appellant filed their respective claims to the money. Eight years later, on October 4, 1955, the circuit court decreed that the money belonged to appellant, but denied him interest.

The sole question presented on this appeal is, as stated by appellant, "the right of Hunt C. Hughes (appellant) to interest on moneys which the Court has found to be due him by Appellee."

■ Preliminary to the main question, we hold that the pleadings present an appropriate occasion or situation for interpleader. Pratt v. First National Bank of Fayette, 243 Ala. 257, 9 So.2d 744; Perdue v. State National Bank, 254 Ala. 80, 47 So.2d 261; Womack v. First National Bank of Guntersville, 269 Ala. 411, 113 So.2d 194.

■ We consider first the question of interest on the $1,337.40 which was paid into court. The rule is stated in 48 C.J.S. Interpleader § 44, as follows: "Where a bill of interpleader is properly filed, the payment of the money into court, or a proper offer to do so, the stakeholder being at all times ready to do so, stops the running of interest; but if the fund is not paid into court at the proper time it is proper to compute interest up to the rendition of the final decree." To similar effect, see 30 Am.Jur., Interest, § 53; Annotation 15 A.L.R.2d 474.

Appellant concedes that a fund paid into court and in the actual custody of the court bears no interest, but argues that here, the entire fund was not paid into court and that the court did not have custody of the entire fund during the pendency of the suit and, therefore, the rule does not apply in the instant case.

■ That brings us to a consideration of the $9,000, which the appellee held in

lieu of the bank drafts mistakenly issued to appellant.

The question of interest on money which is the subject of an action in the nature of interpleader, but which has not been paid into court, has not been decided in this jurisdiction. The case nearest in point is that of Supreme Lodge Knights of Honor v. Selby, 153 N.C. 203, 69 S.E. 51, 52. The Lodge was a fraternal beneficiary association. One of its members, who had received a benefit certificate for $2,000, died and the $2,000 was claimed both by his children and a corporation, to which the certificate had been pledged as security for a loan, and which claimed it had paid the premiums for four years and had possession of the certificate. The Lodge filed a bill in which it prayed that "it might be allowed to pay into court the sum of $2,-000 and stand discharged from any and all liability, and that the defendants be required to litigate their claims." No order was made, as here, requiring the Lodge to pay the money into court before final judgment. This judgment included interest and the Lodge appealed. The Supreme Court of North Carolina disallowed the interest, saying:

"* * * The plaintiff was prompt in bringing this action and in filing its complaint. It offered therein to pay the money into court, and prayed thereupon to be discharged from further liability. If an order directing payment to be made into court had been made and the plaintiff had failed to comply, then it would have been proper to charge it with interest for such default. The plaintiff being an assessment company and having avowed its readiness to pay the amount of the certificate into court, and nothing appearing in the record to the contrary, we must assume that it continued ready to pay the same into court at any term when it was so ordered. There were five of these terms between the return term and the term at which the judgment was rendered, at any one of

which it was competent for the court to make such an order. It is not suggested that the plaintiff invested the assessments collected to pay this certificate, or that it received any interest on this fund. We think, therefore, his honor ought not, upon the facts presented, to have charged the plaintiff with interest on the amount of the benefit certificate. The case is somewhat analogous to a proper tender of money. This stops interest; the reason being that the person to whom the tender is made is in the wrong in declining to receive it. In this case the conflicting claims for the fund justify the plaintiff, as a mere stakeholder, in appealing to the court to compel the claimants to litigate their claims. * * *"

In Niedermeyer, Inc. v. Fehl, 153 Or. 656, 57 P.2d 1086, 1090, the fund was held and not paid into court, and it was said:

"* * * Plaintiff claims no interest in the fund involved. It appears that it is now and has been, since it offered to tender the money into court, willing at all times to pay the fund involved to whomsoever it rightfully belonged, as soon as the plaintiff could safely do so. Its acts in regard to the repayment of the funds, which were received upon the erroneous sale of the real estate, have been at all times free and above board. * * *

*    *    *    *    *    *

"Plaintiff claims that it should not be required to pay interest upon the fund after the date of the filing of this suit. John Niedermeyer, secretary and manager of plaintiff corporation, testified that at all times since the institution of this suit the plaintiff was ready, able, and willing to pay whatever amount the court determined to whoever was entitled thereto. His testimony was not contradicted. See 15 R.C.L. 34, § 31; 26 R.C.L. 625, § 4. It was not the fault of Niedermeyer, Inc., which caused delay in the deter-

mination of the matter as to who should receive the money, and it is only equitable that plaintiff should not be required to pay interest during the pendency of this suit."

In the instant case, appellee could not determine with safety to whom the money should be paid, and it was not safe to pay the $9,000 into court because of appellant's refusal to surrender his drafts, which were negotiable and chargeable to appellee. However, appellee paid the $1,337.40 into court and alleged that it "is ready, able and willing and offers to dispose of all of the same (money and other property) in accordance with the orders of this court."

We, therefore, hold that under the particular circumstances existing in the instant case, the lower court correctly held that appellee is not chargeable with interest on either sum or the entire amount, and the decree is affirmed.

Affirmed.

SIMPSON, STAKELY, GOODWYN and COLEMAN, JJ., concur.