Argued May 20; modified July 7, 1937

# ABRAMS *v.* RUSHLIGHT ET AL.

(69 P. (2d) 1063

*C. C. Hall*, of Portland (Robert A. Leedy, of Portland, on the brief), for appellants.

*William G. Smith*, of Sherwood, for respondent.

BAILEY, J.   In October, 1927, and for some time prior thereto, A. G. Rushlight, W. A. Rushlight, his son, and O. J. Charais constituted a partnership doing business under the firm name of A. G. Rushlight & Co. The partnership conducted an extensive business including general plumbing and heating and installation of sprinkler systems, oil burners, refrigerating and air conditioning systems.   About October 1, 1927, the plaintiff, Sam Abrams, who for many years had been engaged in the digging of sewers, under the name of Oregon Construction Company, entered into a special partnership with the general partnership of A. G. Rushlight & Co. for the construction of sewer and water systems.

This suit was instituted by the plaintiff for an accounting for the construction work done by said special partnership. The original complaint was against only the executors of the estate of A. G. Rushlight, deceased, as practically all the dealings which the plaintiff had were with A. G. Rushlight. During the trial the fact developed that A. G. Rushlight was acting for and on behalf of the general partnership, A. G. Rushlight & Co. It further appeared that in 1929 the members of the general partnership had incorporated under the name of A. G. Rushlight & Co., and the business and assets of the general partnership had been transferred to the corporation. Thereupon an amended complaint was filed by the plaintiff, wherein W. A. Rushlight and Waldemar Seton, executors of the estate of A. G. Rushlight, deceased, W. A. Rushlight, O. J. Charais and A. G. Rushlight & Co., a corporation, were designated as defendants.

From a decree in favor of the plaintiff and against the defendants in the sum of $4,217.89 and interest, the defendants appeal.

The special partnership was shown to have extended over a period of approximately two years, during which time its business comprised 15 sewer projects and one water system contracted for and completed. At the time the special partnership was formed the plaintiff was the owner of a considerable amount of machinery, equipment and personal property used in the construction of sewers and water systems, all of which he turned over for use by the special partnership.

The terms and conditions of the special partnership were based on an oral agreement between the plaintiff and A. G. Rushlight, representing the general partnership. The evidence is undisputed that during the continuance of this special partnership the plaintiff was

expected to devote all his time and attention to the business of that partnership, was to furnish the machinery, equipment and personal property above referred to and was to be paid $125 a month as salary, and one-half of the net profits of the special partnership's operations. The general partnership was to supply the financing. The defendants assert that A. G. Rushlight was to receive a salary equal to that of plaintiff, $125 a month, but this is denied by the plaintiff. It is contended by the defendants that certain overhead ought to be charged against the special partnership, and this likewise is denied by plaintiff.

During the trial the court appointed a certified public accountant "as sole referee to take and state an account of all dealings and transactions between plaintiff and defendants as partners; and for the taking and stating of which account the parties are to produce before said referee under oath, all books, deeds, papers and writings in their custody, or under their control, relating thereto; the said referee in taking said account shall make all just allowances to the parties as between themselves". A report was made by the referee and exceptions thereto were filed by the plaintiff.

According to this report the total cost of the above-mentioned 16 projects to the special partnership was $171,683.36, of which amount $19,915.98 was charged as overhead. There were also included in the total certain expenditures for which there were no vouchers. The trial court reduced the overhead from $19,915.98, which represented 13.1 per cent of the total cost less overhead, to $3,696.94, which was equivalent to a charge of approximatey $150 a month for the duration of the special partnership.

While the special partnership continued the plaintiff was furnished a desk in the office of the general

partnership and the bookkeeping of the special partnership was done by the general partnership without hiring additional clerical help. Charged to overhead were the "rent, heat, light, power, delivery service, shop man and all other incidental expenses that would make up any overhead in any business," of the general partnership, which included, of course, the office space furnished the plaintiff, clerical assistance supplied the special partnership, and many other items. For instance, the total overhead expense as computed by the defendants for the year 1927 was segregated as follows: advertising, $553.85; automobile and delivery expense, $999.24; depreciation, $580.89; discount, $7.29; general or miscellaneous items, $36; heat, light, power and water, $135.90; general insurance, $667.32; interest, $1,051.58; office supplies and equipment, $1,371.04; rent, $1,375; salaries, $7,722.50; shop expense, $4,-096.94; sprinkler expense, $4,717.49; taxes, $1,700; telephone and telegrams, $172.14; traveling expenses, $114.39; making a total of $23,618.57, of which amount $4,149 was charged to the Gladstone water system alone, a project which was started in October of that year.

For the years 1928 and 1929 the total overhead charged to the general and special partnerships was respectively $32,559.63 and $34,280.79.

The record discloses that all costs which could be segregated and charged to the separate projects of the special partnership were so charged. No attempt, apparently, is made to justify these exorbitant overhead charges against the special partnership, except that it is stated that the combined cost of all the business of the general partnership was added to that of the special partnership and the overhead prorated accord-

ing to the amount of business done by each partnership.

■ The general partnership had its established place of business. It had certain fixed expenses to meet. The special partnership did not add to those fixed costs and it should not have been required to pay more than the reasonable value of the services furnished it by the general partnership. From the record before us we find that the amount which was allowed by the trial court for what was termed overhead, but which properly should not be so designated, was indeed ample.

In this respect it is stated by the accountant who made up the books that he was instructed by A. G. Rushlight to apportion the overhead as he did. He said, however, that Mr. Rushlight had advised him that the plaintiff was a partner in the Gladstone water project, and had not mentioned any partnership as to the other projects. In this connection he testified: "On the other jobs he [Rushlight] never said anything about a partnership but he did say that if things worked out all right he would give Sam a bonus because he liked him."

It should be borne in mind that at first it was contended by the defendants that there was a special partnership only as concerned the Gladstone water and sewer systems. Later, however, they admitted that the business of the special partnership included all 16 projects.

■ The appellants assume that since the respondent did not file a cross-appeal the only question before this court is that of the correctness of the computations made by the circuit court which are here challenged by the appellants. Inasmuch as this is a suit in equity, the cause is tried anew on appeal and although the circuit court may have committed error in allowing or disallowing certain items, and its rulings in those in-

stances are attacked by the appellants, nevertheless if the result reached is approximately correct, upon a review of the entire record, it makes no difference how the court apportioned any part of the aggregate of its award. Nor does it matter that improper credits were allowed to the plaintiff, if offset by improper allowances to the defendants or by the failure to make proper allowance in other instances to the plaintiff.

With a problem under consideration similar to the one here presented, this court, in *Crumbley v. Crumbley,* 94 Or. 617 (186 P. 423), said:

"The plaintiff is here seeking further advantage over the defendant. Not content with what the trial court gave her, she wants more. Her right to additional relief must depend upon equitable considerations to be derived from a perusal of the whole record, for, as said in Bush v. Mitchell, 28 Or. 92, 96 (41 Pac. 155, 156), 'an appeal from a part of a decree must necessarily bring to the appellate court the whole decree, and while the part appealed from may be affirmed, modified, or reversed, the portion not reviewed will be affirmed. The whole cause being tried here *de novo,* a complete decree must be rendered in this court.' The clear deduction from the foregoing citations is that on an appeal from a part of a decree, the whole record may be considered to determine whether that portion of the decree ought to have been rendered; that the quest of the appellate court is controlled so that the part not appealed from must stand as a constant quantity in making up the final result; that the party who did not appeal can not obtain from this court a decree more favorable to him than that rendered by the trial court; that he may resist any change in the decree, using for that purpose anything disclosed by the record of the whole case, and that the appellant, having come into this court seeking additional relief, must submit herself to equitable principles as upon a hearing *de novo,* so far as the part of the decree appealed from is affected."

The trial judge in his decree considered separately each of the sewer and water projects and in every instance reduced the amount of overhead and adjusted the same according to what he thought should be charged to each project. As we are of the opinion that the total amount allowed by the court for this item was ample, there is no necessity of discussing whether or not the amount allowed to each separate project was correctly apportioned.

The decree provides in part as follows:

"It is further considered, ordered, adjudged and decreed that on or about the 1st day of February, 1930, the above named defendants wrongfully and unlawfully converted to their own use and benefit all of the machinery, tools, and equipment of plaintiff, depriving him of the use of the same, including additional equipment in which plaintiff had an interest which was purchased in the course of the construction of the various jobs, and that the reasonable value of said equipment at the time of said conversion was the sum of $5,000, and he is entitled to a credit for the interest on this sum from February 1, 1930, at 6 per cent."

This $5,000 was computed by the court as a credit to the plaintiff in arriving at the net sum of $4,217.89 which was decreed to be due him from the defendants. If the $5,000 were eliminated, the decree would then provide for judgment in favor of the defendants in the sum of $782.11. This amount, as we view the record, is approximately correct, and we do not feel warranted in disturbing the decree so far as it is concerned.

In reaching this conclusion we have considered the item of $1,838.19 allowed by the court as a credit to the special partnership for certain hauling done by it for outside parties. We have further considered the other items allowed by the court as credits to the special partnership, to which objection is made by the appellants. We are of the opinion that the aggregate

of credits allowed by the court is as nearly correct as possible in view of the complicated and involved record. While some of the items of credit which the court allowed should have been disallowed, nevertheless there are other items that the court should have allowed but did not, which compensate and offset those improperly allowed.

It is strenuously urged by the appellants that since a set of books of the special partnership's business was kept the court should not go beyond the entries therein made. It is further asserted by the appellants that the respondent had full access to these books and that he did not make any objection to the entries except on the ground that the numerous projects were not showing a profit. This contention of the appellants is somewhat at variance with their attitude during the trial of the suit. Then they argued that the respondent was not a partner except in two of the 16 projects, and that he was a mere salaried supervisor as to the other 14 contracts.

It is to be borne in mind that these books were kept by employees of the general partnership and, according to the record, the various entries in them were made under the direction of A. G. Rushlight. The accountant who kept the books did not at any time consult the respondent, nor did he know that the respondent was a partner except as to one of the projects.

■ We are well aware of the rule of law that when partnership books are kept in the regular course of business, the entries therein made are to be considered prima facie correct, and that the burden of proof to show that they are not correct rests on the partner who questions them. However, the respondent apparently did not have free access to the books. In addition thereto, the evidence in the case was sufficient to over-

come the presumption of correctness as to numerous items entered in the books. Certain items for which the court gave credit to the special partnership, such as the hauling done for outside parties, were not covered by bookkeeping entries.

Reverting to the excerpt above quoted from the decree, as to the allowance of $5,000 by the court to the plaintiff for the conversion of certain personal property, it will be observed that the personal property for which this allowance was made is not limited to that owned by the plaintiff individually, but includes personal property which was acquired by the special partnership. There is nothing anywhere in the record to indicate how much of this allowance should be allocated to the plaintiff's individual property or how much to the special partnership's property.

The value of the personal property which plaintiff brought to the special partnership was estimated by the plaintiff himself to be $9,681 as of October, 1927. Included in the itemized list of such property is a Byers Bearcat digger, given a value of $5,300 as of that date. This digger was found by the court to have been sold by the plaintiff to A. G. Rushlight & Co. in April, 1928. If we eliminate the value of the digger from the total amount of value of the personal property as estimated by plaintiff, there remains a balance of $4,381 as of October, 1927.

Included also in this list of personal property is a Cletrac [tractor] with estimated value of $1,050, which was sold on execution against the plaintiff and does not appear to have been converted by the defendants. Several of the items included in the list set forth in plaintiff's amended complaint were worn out in the construction work done by the special partnership and were replaced with other equipment. There were nu-

merous other items of personal property belonging to the plaintiff taken to Klamath Falls for use there on the last project completed by the special partnership, and the plaintiff is uncertain whether they were removed from the work and returned to Portland or what was done with them.

From the record before us it is impossible to determine just what personal property belonging to plaintiff was converted by the defendants as alleged, or what may be the value of such property. It is apparent that some of plaintiff's personal property actually was appropriated and retained by the defendants, but there is no evidence as to the value of it, either at the time it was taken or at any time since. It is likewise impossible to ascertain what personal property the special partnership owned that was retained by the defendants and not accounted for to the plaintiff.

Because of the state of the record before us any attempt to arrive at the value of the personal property of the plaintiff or of the special partnership, at the time of the conversion thereof, would be a mere conjecture. We have not overlooked the argument advanced by the respondent relating to the value placed on certain personal property, not specifically designated, transferred by the general partnership of A. G. Rushlight & Co. to the corporation of the same name. No definite value of the property in dispute can be ascertained from the mere recital in that connection made by the parties to the transfer.

As already pointed out, this is a suit for an accounting, and since the record discloses that certain personal property belonging to the plaintiff and other personal property owned by the special partnership have been converted by the defendants, the plaintiff is entitled to recover from the defendants the value of

his property at the time of the conversion thereof by the defendants, and is further entitled to an accounting by the defendants of plaintiff's one-half interest in the personal property of the special partnership at the time the general partnership sought to transfer the same to the corporation. In order to arrive at a just settlement of this question it is necessary to remand this cause to the circuit court for further proceedings to determine exactly what property owned individually by the plaintiff, and what property in which he had an interest, the defendants have converted, and the value of such property at the time of conversion.

The further proceedings in the circuit court will be limited to those questions, as we affirm the decree in regard to all other matters presented in this cause. This affirmance, as already stated, is to the effect that with reference to the other questions involving the special partnership the plaintiff is indebted to the defendants in the sum of $782.11. No proceedings, however, should be instituted to enforce the payment of that amount until it is settled how much the plaintiff is entitled to recover for the conversion of personal property.

■ The circuit court allowed the plaintiff interest at the rate of 6 per cent per annum from February 1, 1930, on the amount which it found due plaintiff from the defendants. The allowance of such interest is objected to by the defendants, and since the question will probably arise again in further proceedings herein it is well to dispose of it at this time. In a number of cases, beginning with *Eldridge v. Hoefer,* 45 Or. 239 (77 P. 874), this court has held that in trover the plaintiff is entitled to recover the value of the property at the time of the conversion, with interest thereon up to the time of trial. It is said in that case, with refer-

ence to the principle underlying an action of trover: "It is based upon the theory that by the conversion the title to the property passes to the defendant and he is liable for its value."

In *Singer v. Pearson-Page Co.,* 58 Or. 526 (115 P. 158), this court said: "In an action in trover the rule for the measure of damages is well understood. The title to the property, alleged to have been converted, is regarded as having passed to the defendant, who is liable for its value, together with simple interest. 'The measure of damages, therefore, in an action of trover, unless plaintiff, by reason of the unlawful act of the defendant, has suffered some special loss or injury, which must be alleged, is the value of the property at the time of the conversion, with interest thereon to the trial.' " Citing authorities. See, also: *Durham v. Commercial National Bank,* 45 Or. 385 (77 P. 902); *Siverson v. Clanton,* 88 Or. 261 (170 P. 933, 171 P. 1051); *Backus v. West,* 104 Or. 129, 146 (205 P. 533).

The appellants, however, rely on the case of *Dunn v. Assets Realization Co.,* 141 Or. 298 (16 P. (2d) 370, 17 P. (2d) 1118), wherein it is said: "It does not appear from the decree that the trial court took into consideration the question of interest so far as affecting the rights of the plaintiff mortgagee. Since recovery against the plaintiff is based on the theory of conversion of the property in question, it is clear that no interest should be charged." The question of interest was not directly involved in that case. No authorities are cited in support of the above-quoted statement. It is contrary to the prior holding of this court and to the now almost universal rule of other jurisdictions of this country.

In 96 A. L. R. at page 74, the annotator, in a note referring to interest in cases of trover and conversion,

observes: ''The general rule in actions in trover, or actions in the nature of trover, for the conversion of personal property, is that the measure of damages is the value of the property at the time and place of conversion, with interest from that time. In only one jurisdiction (Oregon) does a rule to the contrary seem to prevail, and this rule is enunciated in only one case; but that case is later than the cases following the general rule.'' The Oregon cases are referred to at page 99 of the above volume, and the Dunn case is shown to be the one regarded by the annotator as a departure from the rule theretofore established. We adhere to the earlier holdings of this court to the effect that the measure of recovery in trover for the conversion of property is the value of the property at the time of the conversion, together with interest thereon at the legal rate of 6 per cent per annum from the date of the conversion.

■ According to the record in the case the conversion of the personal property here involved occurred prior to January 1, 1930, and was consummated by the transfer or attempted transfer of the personal property by the general partnership to the corporation. If the conversion occurred after the death of A. G. Rushlight, no recovery could be had against his executors, for the reason that they did nothing toward the appropriation and retention of the personal property in dispute.

■ The appellants here raise for the first time the question of the right of the respondent to maintain this suit against the executors of the estate of A. G. Rushlight, deceased, prior to presentation of any claim to the executors. We find nothing in the record indicating that the plaintiff did not so file a claim, although we are at a loss to know what kind of claim could have been filed in this instance, inasmuch as the amount to

which plaintiff may be entitled cannot be determined until after an accounting is had. By answering to the merits and failing to raise this question either by demurrer or answer, the defendants, including the executors, have waived any objection to the maintenance of the suit that they may have: *Bramwell v. Heseltine,* 122 Or. 519 (259 P. 1063); *Hudson's Administrators v. Combs,* 110 Ky. 762 (62 S. W. 709); *Pepper v. Sidwell,* 36 Ohio St. 454.

*Lee v. Gram,* 105 Or. 49 (196 P. 373, 209 P. 474, 27 A. L. R. 1001), relied upon by appellants, was a suit against the executrix of an estate for damages amounting to $2,750 as proceeds of timber cut on plaintiff's lands. A demurrer to the complaint was filed on the ground that no claim had been presented to the executrix, which demurrer was sustained. That case did not involve a waiver of the objections through defendant's failure to raise the question seasonably.

These litigants have undertaken to settle in this one suit all the disputes that have arisen out of the former special partnership between the plaintiff and the general partnership of A. G. Rushlight & Co., including the alleged conversion by the alleged partnership and the defendant corporation of personal property of the plaintiff and of the special partnership. The propriety of the procedure adopted has not been questioned by the litigants themselves.

We have considered the other legal questions raised by the appellants and found that they are without merit. The decree appealed from is modified as hereinbefore stated and the cause is remanded to the circuit court for further proceedings not inconsistent with this opinion. Neither party will recover costs in this court.

BEAN, C. J., and CAMPBELL and RAND, JJ., concur.