Argued November 29, 1938; affirmed January 4, 1939

ABRAMS *v.* RUSHLIGHT ET AL.

(85 P. (2d) 1019)

*William G. Smith,* of Sherwood, for appellant.

*C. C. Hall* and *Robert A. Leedy,* both of Portland, for respondents.

BAILEY, J. In October, 1927, the plaintiff, who had been engaged in construction and contracting business at Grants Pass, Oregon, entered into a special partnership with A. G. Rushlight, W. A. Rushlight, his son, and O. J. Charais, who were then doing business under the firm name of A. G. Rushlight & Co., for the construction of sewer and water systems. At the time of entering into the special partnership the plaintiff owned machinery and equipment which he had used in

constructing a sewer system at Grants Pass. This personal property was turned over to the special partnership, according to agreement, for use by it in the construction of sewer and water systems. The agreement provided that the general partnership of A. G. Rushlight & Co. was to finance the special partnership's operations.

About July 1, 1929, the corporation A. G. Rushlight & Co. was organized, and the assets of the general partnership of that name were transferred to it. From that time the corporation was substituted for the general partnership in the special partnership arrangement.

The last work done by the special partnership was the completion of a sewer system at Klamath Falls in December, 1929. A. G. Rushlight died about January 6, 1930. This suit was instituted by the plaintiff on June 4 of that year, for an accounting by the executors of the estate of A. G. Rushlight, deceased, the other two members of the general partnership, A. G. Rushlight & Co., and the corporation of the same name. In the complaint the plaintiff asked that the defendants account for the profits realized from the sixteen construction jobs, for the value of the machinery, tools and supplies furnished by the plaintiff to the special partnership, and for one half the value of the machinery and equipment purchased by the special partnership, all of which he claimed to have been converted by the defendants.

The trial court held that the special partnership suffered a loss in its operations, and that the plaintiff was indebted to the defendants on account thereof in the sum of $782.11. The court further found that the defendants had converted plaintiff's machinery and

equipment and his interest in the personal property of the special partnership, and that the value thereof was $5,000, which amount, less $782.11, was awarded the plaintiff. From the decree of the circuit court the defendants appealed, and on that appeal this court affirmed the decree in so far as it related to a general accounting of the special partnership operations, and reversed that part of the decree awarding plaintiff $5,000: *Abrams v. Rushlight,* 157 Or. 53, 69 P. (2d) 1063, 111 A. L. R. 1292.

In reversing the decree in part this court stated:

"From the record before us it is impossible to determine just what personal property belonging to plaintiff was converted by the defendants as alleged, or what may be the value of such property. It is apparent that some of plaintiff's personal property actually was appropriated and retained by the defendants, but there is no evidence as to the value of it, either at the time it was taken or at any time since. It is likewise impossible to ascertain what personal property the special partnership owned that was retained by the defendants and not accounted for to the plaintiff."

The cause was remanded with explicit direction that further proceedings be had in the circuit court to determine what property was converted and the value of the same. On this second trial the court found that certain designated machinery, tools and supplies belonging to the plaintiff of the value of $358 and certain personal property belonging to the special partnership of the value of $275 had been converted by the defendants, and awarded judgment in favor of the plaintiff and against the defendants for the full value of the property owned by him individually, and one half the value of the property belonging to the special partnership. In addition thereto plaintiff was decreed

the further sum of $250, which the court found to be "reasonable to be allowed to plaintiff for all equipment whether plaintiff's or in which plaintiff had an interest, for which no specific allowance has been made herein". The total of the items for which judgment was awarded the plaintiff was $745.50, which, subtracted from the sum of $782.11 found due the defendants from the plaintiff in the general accounting on the former trial and confirmed by this court on the first appeal, left remaining a balance of $36.61 due from plaintiff to the defendants. From this decree the plaintiff has appealed.

On the second trial of the cause the plaintiff presented an itemized list of machinery, tools and supplies which he claimed had been owned by him individually and turned over to the special partnership and thereafter converted by the defendants. The value thereof was estimated by plaintiff as $9,681. Included in this list, with value placed thereon by the plaintiff, were the following: one Byers Bearcat digger, $5,300; one extra bucket for digger, $475; one Cletrac (tractor), $1,050; one Ford one-ton truck, $575; one Ford one-ton truck, $700; aggregating $8,100. On the former appeal this court held that the Bearcat digger had been sold by plaintiff to the general partnership, A. G. Rushlight & Co., in April, 1928, and that the Cletrac had been sold on execution against the plaintiff and hence was not converted by the defendants. The plaintiff admitted that the title of the two Ford trucks had been transferred to the general partnership, and it appears from documentary evidence that this transfer must have been made prior to April, 1929. The extra bucket for the digger, according to the preponderance of evidence, was attached to, and became a permanent

part of, the digger, and was so used in performance of the work of the special partnership.

In addition to the foregoing list of items of personal property owned by the plaintiff at the time of his entering into the special partnership, the following items were listed: two Fairbanks-Morse engine-driven trench pumps complete with suction hose and skids, and five sewer trench pumps with suction hose and foot valves complete, with value thereof estimated by plaintiff as $450 and $265, respectively. If we were to add the estimated value of this equipment to the $8,100 above mentioned, we should have a total of $8,815 accounted for out of the aggregate of $9,681. The court allowed on the engine-driven pumps and the sewer pumps the sums of $170 and $125, respectively. It also allowed in addition to the last-named amounts, $3 for a large pipe hook and $10 for two side cutters for the digger. The record would not support any greater value than allowed by the circuit court for the pumps, pipe hook and side cutters.

Included in the list of machinery, tools and supplies owned by the plaintiff in October, 1927, and delivered by him to the special partnership were many hand tools which, according to the evidence, were used and consumed in the excavation work performed by the special partnership, or were thereby rendered of little value. The trial court, however, made an allowance of $50 as the value of miscellaneous items of personal property belonging to the plaintiff individually and remaining after the completion of the special partnership's operations.

The special partnership, according to plaintiff's testimony, expended in the neighborhood of $2,500 for tools and equipment to be used in its operations. Such

equipment, tools and supplies, the record shows, were almost entirely consumed in the work. On so much of the personal property of the special partnership, converted by the defendants, as could be identified the court placed a value of $275, one half of which amount, or $137.50, was credited to the plaintiff. In this connection, the $250 allowance to plaintiff as a credit against the defendants, hereinabove mentioned, should also be kept in mind.

It is the plaintiff's contention that the conversion by the defendants occurred in the latter part of January or early in February, 1930. The plaintiff himself was the only witness who testified on plaintiff's behalf. His testimony was vague, indefinite and of very little value to the court in determining what property had been converted and the value thereof at the time of conversion. The defendants, on the other hand, called a number of witnesses who were familiar with the character of the work performed by the special partnership and with the nature of the tools and equipment in question. Their testimony as to depreciation and remaining value of the machinery and equipment was definite and certain. Other witnesses were called by the defendants who identified with reasonable certainty the personal property converted by the defendants.

After a careful consideration of the entire record, we are of the opinion that the preponderance of the evidence supports the findings of the trial court and that in the light of the facts shown no greater allowance could have been made plaintiff by that court than was awarded him. The decree appealed from is therefore affirmed, neither party to recover costs in this court.