Argued February 9, affirmed as modified March 5, 1970

# STATE LAND BOARD, *Respondent, v.*
# GENERAL CONSTRUCTION
# COMPANY, *Appellant.*

### 465 P2d 731

*Jonathan A. Ater,* Portland, argued the cause for appellant. With him on the briefs were Lindsay, Nahstoll, Hart, Dafoe & Krause, Portland.

*Peter S. Herman,* Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Lee Johnson, Attorney General, Jacob B. Tanzer, Solicitor General, and Walter L. Barrie, Assistant Attorney General, Salem.

Before LANGTRY, Presiding Judge, and FORT and BRANCHFIELD, Judges.

LANGTRY, J.

This is a suit in equity seeking an injunction and money judgment. Defendant allegedly trespassed on the channel of the Columbia River in Oregon and converted material therefrom, transporting it for fill use on a highway project in the state of Washington. The State of Washington had obtained from the United States Army Corps of Engineers a permit giving authority for channel improvement of the area involved and assigned it to the defendant, which had a contract with the Washington State Highway Commission to construct a highway along the north side of the Columbia River. The taking of the material was ad-

mitted, and the other above-mentioned facts were set up as an affirmative defense. Plaintiff's demurrer to the affirmative answer was sustained. Defendant refused to plead further and appealed from the resulting judgment.

■ The parties stipulated to the amount of materials taken and the reasonable value thereof, $129,607.50, and interest, if allowed, from the time of taking, $9,072.52. The defendant alleges the trial court erred by (1) not sustaining the affirmative defense, and (2) allowing interest on the value of the material from the time of taking.

(1) ORS 274.550 provides that material may be removed from navigable stream beds in Oregon without payment of royalty, as follows:

"(1) The removal of material from submersible and submerged lands of any navigable stream, owned by the State of Oregon, is authorized when the material (a) is removed for channel or harbor improvement or flood control, or (b) is used for filling, diking or reclaiming land located not more than one-half mile from the bank of the stream, or (c) is used for filling, diking or reclaiming land owned by the state or any political subdivision as defined in subsection (1) of ORS 271.300 and located not more than two miles from the bank of the stream. However, prior to removal, such person, organization or agency contemplating removal shall first notify the division [Division of State Lands], and the division shall in turn notify the state agencies mentioned in ORS 274.530."

Defendant's argument is that subsection (1)(a) of this statute clearly allows stream bed material to be "removed for channel or harbor improvement" without payment. A similar argument was made in *Land Bd. v. West.-Pac. Dredg. Corp.*, 244 Or 184, 416 P2d 667

*(1966)*, but there such material, in the words of the statute, was used for filling land "located not more than one-half mile from the bank of the stream" in the state of Washington, thus bringing the taking under the exception of ORS 274.550(1)(b).

The Oregon Supreme Court in that case ruled that payment must be made for the material because the legislature did not intend that such material should be used without payment of royalty outside of the state of Oregon, even though it was used within one-half mile of the bank of the stream from which it was removed. The Court said:

"It has been consistenly held that the lands underlying the navigable waters of the state are held by the state *in trust for the benefit of the whole people of the state. Winston Bros. Co. v. State Tax Com.*, 1937, 156 Or 505, 511, 62 P2d 7. The proceeds derived from any use of the lands became a part of the Common School Fund. ORS 274.600 (3). Other restrictions on the leasing and use of the valuable material that may be taken from the bed of a navigable stream indicate a *legislative intent to strictly limit its use and the benefits of its taking.* ORS 274.590 authorizes the State Land Board to cooperate with the proper authorities of the State of Washington for the taking of this material from the bed of the Columbia river and to make agreements for the division of the royalties that may be received. *This does not indicate that the legislature intended to allow a free taking of material from the Oregon bed of the river for the benefit of Washington land."* (Emphasis supplied.) 244 Or at 186.

We do not believe that the legislative intent in this regard was any different under subsection (1)(a) than it was under subsection (1)(b). Defendant contends that the benefit accruing to Oregon through improve-

ment of the channel is the consideration that the legislature had in mind when it made exception (1)(a), a consideration which it contends is different than with reference to the exception of (1)(b). We doubt this is so. Building up the land within one-half mile of a stream bank may be as valuable an improvement to the state as having a good channel in the stream. But difference in intent, if there really was any, does not change the duty that the state has to collect payment for valuable stream bed material which it holds in trust and which is taken for a useful purpose to the state of Washington.

■ The fact that a permit to dredge the channel of the river in Oregon was obtained by the State of Washington does not matter, for the State of Oregon retains its concurrent jurisdiction over the stream bed. See *Southern Pacific Co. v. Arizona,* 325 US 761, 65 S Ct 1515, 89 L Ed 1915 (1945); *Montgomery v. Portland,* 190 US 89, 23 S Ct 735, 47 L Ed 965 (1903); *Cummings v. Chicago,* 188 US 410, 23 S Ct 472, 47 L Ed 525 (1903); *Wisconsin Power & Light Co. v. Public Service Com.,* 5 Wis 2d 167, 92 NW 2d 241 (1958).

In *Obrecht v. National Gypsum Co.,* 361 Mich 399, 105 NW 2d 143 (1960), the defendant had obtained a permit from the U. S. Corps of Engineers to dredge and construct a shipping facility in Lake Huron, and claimed this permit ousted the state's jurisdiction over the lake bed. The Michigan Supreme Court said in Footnote 3, "* * * permission given by the Corps of Engineers to dredge and construct has no effect upon the separate *right and duty* of the riparial state to protect and conserve *the submerged lands of which it is public trustee* * * *." (Emphasis supplied.)

The emphasis upon the trust character of this property by the Michigan and Oregon Supreme Courts is remarkably similar in *Land Bd. v. West.-Pac. Dredg. Corp.*, and *Obrecht*, supra.

The strict limitation that was applied in *Land Bd. v. West.-Pac. Dredg. Corp.*, supra, is again applied here:

> "* * * This [the provisions of ORS 274.590] does not indicate that the legislature intended to allow a free taking of material from the Oregon bed of the river for the benefit of Washington land." 244 Or at 186.

██ (2) The defendant asserts that the trial court should not have allowed pre-judgment interest. The trial court applied the rule with reference to interest as though recovery was had for conversion. See *Abrams v. Rushlight*, 157 Or 53, 64, 66, 69 P2d 1063, 111 ALR 1292, (1937). The theory is that the defendant by his conversion of the property assumes the title and has the benefit of the property and, therefore, is liable for the value of the property and interest thereon from the date of conversion. In the instant case, we think that defendant exhibited a good-faith belief that it could bring itself under statutory exemption from payment. In its affirmative answer the defendant alleged that prior to removal of any of the material the defendant notified the plaintiff of its intention, and did actually receive from the plaintiff a permit for the removal under ORS 541.605 et seq.[①] The demurrer

---

[①] This Act (Oregon Laws 1967, ch 567, p 1359) provides for issuance of permits to remove material from stream beds "consistent with the protection, conservation and best use of the water resources of this state * * *." ORS 541.620(1). Its purpose is thus unlike that of ORS 274.523 to 274.590, which

to the answer admits this. We do not find the requisites for levying interest as approved in *Abrams v. Rushlight,* supra. Defendant cites *Camas Logging Co. v. Haskins et al,* 221 Or 182, 192, 349 P2d 852 (1960), where the Court said that in a suit in equity, which this is, "Interest is allowable in equity where principles of equity so demand." We think that interest from the date of judgment is commensurate with the equitable principles applicable.

Affirmed as modified.

---

specifically provide for regulation and payment for the taking of property of the nature of that involved here. Compliance with one of these acts does not excuse the taker from compliance with the other, if it is applicable.