PORTSMOUTH CLAY PRODUCTS CO., APPELLANT, *v.* THE NATIONAL BANK OF PORTSMOUTH, APPELLEE.

(No. 523—Decided February 16, 1946.)

*Messrs. Bannon & Bannon,* for appellant.

*Messrs. Bannon, Bannon, Lynn & Howland, Mr. Stewart A. Hoover* and *Mr. Kenneth B. Johnston,* for appellee.

METCALF, P. J. The plaintiff, the Portsmouth Clay Products Company, instituted this action in the Court of Common Pleas of Scioto county to recover from the defendant, The National Bank of Portsmouth, for losses sustained by reason of the vice-president, secretary, general manager and director of plaintiff company, without any authority so to do, depositing to his personal account in defendant bank certain checks made payable to the order of plaintiff. Plaintiff alleged that the defendant bank did unlawfully convert to its own use these checks and the proceeds thereof, the property of the plaintiff. The petition sets forth 28 causes of action which are alike except as to dates, names of payors and amounts involved. The checks total $18,079.27, which amount was reduced by stipulation in the amount of $701.39 to the present amount claimed by plaintiff of $17,377.88.

The defendant's amended answer consists of five defenses, the first being a general denial of the allegations in the 28 causes of action, except the admission of the corporate capacity of plaintiff.

The second defense sets up the negligence of the plaintiff in reconcilement of the bank statements periodically furnished by the defendant to plaintiff.

The third defense sets forth the ground of estoppel by reason of the failure of plaintiff to properly reconcile the statements furnished by defendant and report any discrepancy to the bank as between the statements and the deposits made by plaintiff.

The fourth defense claims restitution by plaintiff's defaulting official in eleven of the causes of action set out in plaintiff's petition.

The fifth defense maintains that the defendant is completely released from any claims or demands resulting from the misconduct of the officers or agents of plaintiff company by reason of certain writings filed with defendant by plaintiff at the time defendant became plaintiff's depositary, in consideration of the banking service to be rendered by defendant to plaintiff.

The trial court rendered judgment in favor of the defendant from which plaintiff appeals on questions of law.

Although there are six separate assignments of error and we have examined them all, yet, in the opinion of this court, only one question is presented a consideration of which is dispositive of this appeal. That question arises under the second and third defenses of defendant's amended answer. Was the plaintiff negligent in the reconcilement of the bank statements and did its failure to report any discrepancies promptly to the defendant estop plaintiff from asserting its claims?

The salient facts are not in dispute. Among the officers of the plaintiff company was one Judd, who in addition to being a director was vice-president, secretary and general manager. Both the plaintiff corporation and Judd did their respective banking business with the defendant bank, each having separate deposits therein. Judd had charge of both of these bank accounts and endorsed in the usual course of business the corporate checks received by plaintiff, and payable to it, as payment for merchandise sold, by placing thereon the corporate endorsement and depositing the same to the plaintiff's account in defendant bank. Commencing on or about February 13, 1939, and running to and including January 7, 1943, Judd, from time to time, added his individual name to that of the corporate endorsement and deposited these checks in his individual account. These fraudulent diversions on the part of Judd make up the 28 causes of action hereinbefore referred to in plaintiff's petition, aggregating the amount hereinabove set out.

Judd, as secretary, had charge of the books of the company and, both individually and in conspiracy with the bookkeeper, entered credit only on the company's books in favor of those customers whose checks he had placed in plaintiff's account in defendant bank but entered no credit on the books to the customers whose checks he had placed in his own account in the same bank. Of course, by this method, the amount of the deposits and the credits entered in the records were made to agree. If and when the occasion required and Judd was forced to give credit to a customer, in so far as the bookkeeping mechanics were concerned, he charged the necessary amount out of his expense or drawing account and credited the customer, which had the effect of keeping the books balanced although, of course, erroneously so.

The defendant bank during the period of these conversions delivered to plaintiff corporation the ordinary bank statements from time to time, approximately monthly, showing the aggregate amount of deposits and withdrawals and the status of the account. These bank statements had printed at the bottom thereof the notation, "Please examine. If not correct report at once." None of the credits given by Judd as a result of charging his expense or drawing accounts are evidenced by these statements of any deposit of the money alleged to have been received on the books of the company from the customers to whom credit was given. The record discloses that at one time Judd borrowed a large sum of money from a customer on a 90-day note and deposited such sum with a small amount of his own money in the bank to the credit of plaintiff in order to balance the books. The record also shows deposits made in the account of plaintiff without entering the same upon the books of the company in order to build up the bank balance sufficient to repay this loan. Judd entered various credits to customers on the books of plaintiff but the same do not appear on the bank statements as deposits. The record in this case discloses the repayment of the customer's loan by this devious method of juggling plaintiff's books and the bank deposits.

The bank statements furnished plaintiff, in many instances within a day or two following these false transactions, could not have been reconciled with the books of plaintiff by an honest employee and should have disclosed, and of course did disclose, the discrepancy or fraud.

The same is true as to the credit given customers, who had theretofore paid the accounts, by Judd charging his expense or drawing account or loan account.

The record is replete with transactions on the part

of Judd in his relationship with the bank and the books of the company, sufficient to establish that plaintiff company knew, or should have known, by the mere formality of reconciling the bank statements with its books, from the inception of the fraud to the end thereof, that something was materially wrong. At no time during this period did plaintiff company ever notify the defendant bank of any variance between the bank statements and plaintiff's books or that anything was wrong in the conduct of its banking affairs as carried on by Judd.

The defendant bank in receiving the checks belonging to plaintiff and collecting the proceeds thereof, being plaintiff's depositary, had a positive duty to see that they were placed in plaintiff's account, and in the event plaintiff company was not negligent, the bank is liable for the acts of its employees in placing the money belonging to plaintiff in the account of Judd. *Potts Co., Inc.,* v. *Lafayette National Bank of Brooklyn, infra.*

There is much in the instant case touching the banking practice of defendant bank in its relationship with its depositors, the plaintiff and Judd. The president of defendant bank admits that this conduct was poor banking practice. This court does not want to be understood as condoning this conduct on the part of the defendant bank yet we are bound by certain definite rules of law in determining whether the plaintiff, by its own conduct, was guilty of negligence precluding recovery.

The Court of Appeals for Franklin county, in the case of *White Castle System, Inc.,* v. *Huntington National Bank,* 36 Ohio Law Abs., 253, 43 N. E. (2d), 737, held in a similar situation:

"Where it is a custom for a bank, known to the customer, to send out statements at certain intervals, it

is the duty of the customer to examine such statements and reconcile them with their own books, and if there is a variance the error must be reported to the bank within a reasonable time."

Counsel for plaintiff, throughout their brief, insist that plaintiff company had no way of ascertaining the fraudulent diversions of Judd because the bookkeeper was co-operating with him in covering up and concealing Judd's wrongdoing. That contention is answered in the *White Castle case* wherein the court held:

"The fact that a depositor has entrusted performance of its duty to examine statements rendered to it by bank and to give notice of errors therein, to dishonest employee who has diverted depositor's check to his own account does not excuse depositor's failure to notify bank of errors in account, since depositor was chargeable with knowledge which examination of statements by honest employee would have disclosed."

That principle of law is pronounced in many of the cases cited by counsel for both parties.

It is further contended that by reason of plaintiff company having its books audited annually by a certified accountant, and that by reason of such audit not having disclosed the variance resulting from the transactions of Judd, it is conclusive that plaintiff company was not negligent. An examination of the testimony of the auditor discloses that only a balance sheet audit was made. His testimony is in effect that he only verified the balance at the close of the year. The evidence discloses that when a detailed audit was made, after the bookkeeper had confessed his part in aiding Judd, there was no difficulty in finding the discrepancy. Therefore, in the opinion of this court, the various audits made during the period of diversions neither added nor detracted from the responsibility of plaintiff company.

In the case of *Erickson Co.* v. *Iowa National Bank,* 211 Iowa, 495, 230 N. W., 342, the Supreme Court laid down the rule that although the principal is not chargeable with knowledge of his agent's dishonest act adverse to the principal's interest, he is nevertheless chargeable with knowledge of such facts as an honest agent would acquire in performing his duty in examining the bank statements.

In the case of *Potts Co., Inc.,* v. *Lafayette National Bank of Brooklyn,* 269 N. Y., 181, 199 N. E., 50, 103 A. L. R., 1142, the purpose of an examination by a depositor of a statement of his account with a bank is ably discussed and it is emphasized that a failure on the part of the depositor to verify the correctness of the debits and credits shown has the effect of making the bank statement an account stated.

It was held in that case that the intrustment by a depositor of its duty, to examine bank statements and give notice of errors therein, to a dishonest employee, who was diverting proceeds of depositor's checks, did not excuse depositor's failure to notify the bank of errors, since depositor was chargeable with knowledge that he had endorsed certain checks to the order of the bank and was charged with disclosures which an examination of the statements by an honest employee would have made.

Counsel for plaintiff in the instant case, both in oral argument and in brief, rely on the case of *Wagner Trading Co.* v. *Battery Park National Bank,* 228 N. Y., 37, 126 N. E., 347, 9 A. L. R., 340. In that case the plaintiff was not the depositor of defendant bank and consequently there was no banking relationship existing between them. Defendant could not send plaintiff bank statements because there were none to send. Therefore, plaintiff could not have been negligent because it owed no duty to defendant bank to reconcile

and report any variance as between plaintiff's books and the deposits.

It is urged that a different responsibility rests upon both the bank and the depositor in a case of fraud as distinguished from that of forgery. But so far as the responsibility of the depositor goes in reconciling the bank statements with its books the law is no different in either fraud or forgery.

There is another feature of this case to which the trial court called attention and that is the familiar rule that, where one of two innocent parties must suffer, justice requires that the loss be borne by him who is first at fault and who first put in operation the power which resulted in the loss.

That principle was reaffirmed and applied by the Supreme Court of Ohio in *Hillside Dairy Co.* v. *Cleveland Trust Co.,* 142 Ohio St., 507, 53 N. E. (2d), 499, a case of forgery it is true, yet one in which it was held that the depositor could not recover when the loss was due to his negligence through his continued, misplaced confidence in his own faithless employee.

In the instant case, there is evidence in the record on the part of plaintiff company that indicates strongly that the plaintiff knew of the gambling and spending habits of Judd but because he seemed to make money for the plaintiff those faults were overlooked.

A consideration of all the evidence in the instant case leads this court to the conclusion that the trial court was correct in its finding that plaintiff was negligent in its failure to reconcile and report any variance or discrepancy between its books and the bank statements furnished by defendant and that by reason of such neglect recovery on the part of the plaintiff is precluded. The judgment will be affirmed.

*Judgment affirmed.*

GILLEN and McCURDY, JJ., concur.