Argued February 7, reversed and remanded April 25, petition for rehearing denied June 13, 1962

# GRESHAM STATE BANK v. O AND K CONSTRUCTION COMPANY AND ZIMMERMAN

370 P. 2d 726
372 P. 2d 187

*Clarence Potts,* Portland, argued the cause for defendant-appellant. On the briefs were Potts & Davidson.

*Robert L. Burns,* Gresham, argued the cause for plaintiff-respondent Gresham State Bank. With him on the brief were McAllister, Burns & Gustafson.

*Jack L. Hoffman,* Portland, argued the cause for defendant-respondent and cross-appellant, Ada Zimmerman. With him on the brief were Pendergrass, Spackman, Bullivant & Wright and Patrick Ford, Portland.

Before ROSSMAN, J., Presiding, and PERRY, O'CONNELL, GOODWIN and LUSK, Justices.

O'CONNELL, J.

This suit was instituted by the Gresham State Bank, interpleading O and K Construction Company and

Ada Zimmerman, dba Zimmerman's Twelve Mile Store, to determine the rights of the defendants to $5,622.98 which was tendered into court by plaintiff bank. This sum represented the amount of money credited to defendant Zimmerman's account in the plaintiff bank upon Zimmerman's deposit of various checks made payable to defendant O and K Construction Company. Zimmerman's Store had cashed the checks upon presentment by F. C. McKenna, a bookkeeper employed by the defendant construction company. McKenna was not authorized to endorse or receive the proceeds of the checks. O and K Construction Company filed a cross-complaint alleging that the checks in question did not bear a valid endorsement of the construction company and sought recovery for conversion of the checks.

The trial court entered an order discharging plaintiff of all liability upon the condition that plaintiff pay into court the sum of $5,622.98, which condition plaintiff met. The court also decreed that plaintiff should receive $500 attorneys fees and its costs incurred in the suit, the amount to be paid out of the money tendered into court.

The court then proceeded to determine the claims of the defendant O and K Construction Company and the defendant Zimmerman to the fund deposited in court by plaintiff. The court entered a judgment for defendant Zimmerman. The judgment also provided that plaintiff and defendant Zimmerman recover their costs and disbursements from defendant O and K Construction Company. Defendant Zimmerman filed a statement of disbursements including $549 previously paid to plaintiff out of the interpleaded funds. Upon objection made by defendant O and K Construction Company the court disallowed the claim for $549.

From the order disallowing the claim defendant Zimmerman cross-appeals.

On or about December 15, 1956, the O and K Construction Company employed Francis McKenna to work in its office located at Twelve Mile Corner near Gresham, Oregon. McKenna's principal duties were to keep the books of the company and to perform other office duties in connection with the business, including answering the telephone, opening the mail, receiving payments made to the company by check or in cash and to give receipts for such payments, and various other duties which we shall describe in more detail below. Although McKenna was required to be at the office of the company during the regular working hours from Monday to Saturday, he was permitted to carry on his own private bookkeeping service for others. Osburn and Kniefel, the officers of the company, were seldom present at the office, their work requiring them to be elsewhere in connection with the operation of the contracting business; consequently they exercised very little supervision over the details of McKenna's work for the company.

From time to time McKenna, in the course of his employment, received checks made payable to the construction company. He was authorized to deposit these checks in the First National Bank of Gresham, which was located about a mile from the company's office. To facilitate the making of these deposits McKenna was furnished a rubber stamp bearing the inscription "For deposit only at the First National Bank." The office supplies also included another rubber stamp with the inscription "O & K Construction Co., Route 1, Gresham, Oregon," which was intended to be used in marking statements, invoices, sales books and other similar items.

During the years 1957, 1958 and 1959 McKenna endorsed 30 checks which had been made payable to the company and cashed them at Zimmerman's Twelve Mile Store, which was also located at Twelve Mile Corner about one half block from the office of the O and K Construction Company. The unauthorized endorsement was made by using the stamp "O & K Construction Co., Route 1, Gresham, Oregon" under which McKenna signed his name, followed by the designation "Office Manager" in some instances and "Bkpr" in others. These checks were cashed at Zimmerman's Store. The store maintained a special check cashing counter at which was maintained a "Regis-Scope" machine by which the check and the person cashing it could be photographed. No inquiry concerning McKenna's right to endorse and cash the checks was made of the officers of the O and K Construction Company. After the checks were cashed, the Zimmerman Store endorsed them and deposited them to its account at the plaintiff bank. The checks were sent through the regular banking channels and paid by the drawee banks. In May, 1959, McKenna's defalcations were discovered, whereupon the O and K Construction Company obtained the cancelled checks from the various makers and made a formal demand upon the drawee banks for the face amount of the checks. The drawee banks in turn made demand upon the plaintiff bank. As these demands were made upon the plaintiff bank, it withdrew from the account of Zimmerman's Store an amount equal to the check and placed it in a suspense account. After the last check had been presented the bank filed this suit in interpleader.

The defendant O and K Construction Company relies upon the rule that one who makes payment upon

an unauthorized endorsement of the payee's name is liable to the payee for conversion.

Defendant Zimmerman contends that the loss falls upon the defendant construction company on the basis of any one of the following grounds: (1) that McKenna had implied or apparent authority to endorse the checks and to present them to Zimmerman's for payment on behalf of the construction company; (2) the construction company is precluded from recovery by its negligence; (3) where one of two innocent parties must suffer the loss should fall upon the one whose acts made the loss possible.

The third contention adds nothing to the first two. There is no legal principle which places the loss upon one of two innocent parties merely because one acted and the other did not. The law makes the choice upon the basis of fault or some other consideration warranting the preference. In the present case we must decide upon some such rational ground which of the two defendants should be favored.

■ We begin with the well established rule that one who obtains possession of a check through the unauthorized endorsement of the payee's name acquires no title to it and is liable to the payee for the amount of the check unless the payee is precluded from setting up the want of authority.[1]

---

[1] House-Evans Co. v. Mattoon Transfer and Storage Co., 275 P2d 268 (Okla 1954); California Stucco Co. v. Marine Nat. Bank, 148 Wash 341, 268 P 891, 67 ALR 1531 (1928); Trails Motor v. 1st National, 76 Wyo 152, 170-72, 301 P2d 775, 782-83 (1956). The same principle is stated in ORS 71.023:

"Where a signature is forged, or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature,

The evidence is clear that McKenna had neither the express nor implied authority to endorse the checks other than for deposit. Defendant Zimmerman contends that if there was not an implied authority the facts disclose that McKenna was clothed with apparent authority. To support this contention Zimmerman points to various instances where, it is alleged, the conduct of Osburn and Kniefel constituted indicia of authority in McKenna to make the endorsements.

■ It is argued that in supplying McKenna with a rubber stamp bearing the name and address of the construction company, he was provided with the means of endorsing paper and thus representing that he had authority to do so. This does not constitute the creation of an appearance of authority. Whatever appearance of authority arose from the use of the stamp was not created by the O and K Construction Company; it was created by McKenna himself. Certainly the mere furnishing of a name and address stamp by the company for use in its office did not create an ostensible authority to endorse checks and receive payment for them. Stamps of this character are used in most offices; the supplying of them signals nothing with re-

unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

and Oregon Laws 1961, Ch 726, § 73.4060 (to become effective September 1, 1963):

"Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business."

See also, Kessler, Forged Indorsements, 47 Yale L J 863, 872 (1938); Annotation, 67 ALR 1535 (1930); Annotation, 31 ALR 1608 (1924).

spect to the authority of those employed to use them.[2] Where there are other facts from which third persons might reasonably infer that authority was granted the principal may be held liable.[3]

Other facts are relied upon by Zimmerman as a basis for the alleged appearance of authority. It is pointed out that McKenna had authority to receive checks and cash in payment of accounts owing to the construction company; that he was in charge of the office without supervision approximately 85% of the time; that he dealt with people who came to the office; that he used the company's charge account at Zimmerman's Store; that he was permitted to use money out of the petty cash fund; that Osburn and Kniefel

[2] First Nat. Bank v. Montgomery Cotton Mfg. Co., 211 Ala 551, 101 So 186 (1924); Fidelity Co. of Md. v. Marion Nat. Bank, 116 Ind App 453, 64 NE2d 583 (1946); Standard Steam Specialty Co. v. Corn Exchange Bank, 220 NY 478, 116 NE 386 (1917); California Stucco Co. v. Marine Nat. Bank, 148 Wash 341, 268 P 891, 67 ALR 1531 (1928). Cf., Trust Co. v. Subscribers Etc., 150 Md 470, 133 A 319 (1926) (no showing that company knew of the existence of the stamp).

Indeed, it has been said that the character of a rubber stamp impression may put one on notice of a possible lack of authority to endorse a check. Passaic-Bergen Lumber Co. v. U. S. Trust Co., 110 NJL 315, 164 A 580 (1933); Brede Decorating, Inc. v. Jefferson Bank & Trust Co., Mo 345 SW2d 156 (1961); Rivers, Com'r. v. Liberty Nat'l. Bank, 135 SC 107, 133 SE 210 (1926).

[3] Glens Falls Indemnity Co. v. Palmetto Bank, 104 F2d 671 (4th Cir 1939) (stamp used by assistant treasurer who had express authority to sign checks and conduct business); Kenney v. North Capitol Sav. Bank, 61 F2d 521 (D. C. App. 1932) (the evidence showed that the principal knew and approved of his agent's use of an unqualified endorsement stamp to deposit money in the principal's account); Warehouse Co. v. Bank, 216 NC 246, 4 SE2d 863 (1939) (checks were endorsed by the secretary-treasurer who had implied authority to endorse the corporation's checks; apparently the use of the stamp was thought insignificant); Hartford A. & I. Co. v. Bear Butte Bk., 63 SD 262, 257 NW 642 (1934) (the company had on previous occasions allowed its employee to stamp checks with a blank endorsement and receive cash for the company; when the employee later kept the proceeds the company was estopped to deny authority).

were frequently in Zimmerman's Store with McKenna; that Zimmerman's employees who cashed the checks in question relied upon the fact that McKenna was the office manager of the construction company. We fail to see how these and the other facts recited by Zimmerman create an appearance of authority to endorse checks and to receive the cash for them. The mere fact that an employee has charge of a company's office does not entitle third persons dealing with the employee to assume that he has the authority to execute or endorse the company's negotiable paper. We find no evidence to support a finding that McKenna was clothed with apparent authority.

The contention that defendant O and K Construction Company was precluded from recovery because of its negligence presents a more difficult legal problem. There was evidence to support a finding that Osburn and Kniefel were negligent in failing to scrutinize the records of the company over the three-year period during which the defalcation occurred. They made little individual effort to examine their books during that period and no audit was made. Neither of them knew much about bookkeeping and, largely because of that fact, McKenna was able to maneuver the records in such a way as to conceal the misappropriation of the company's funds. Osburn and Kniefel could have discovered the diversion of these funds by checking the bank statements against the company's records showing receipt of payment from various customers. But this was not done and the falsification by McKenna of office records and accounts served to deceive Osburn and Kniefel on the few occasions when they superficially checked the records. During the period in question the company's account was overdrawn on several occasions which, it is argued, should

have alerted the officers of the company to the possibility of a misappropriation of their funds. However, apparently it was not uncommon for the company to have overdrafts even when all of its funds found their way to the bank.

It is our conclusion that, although under the circumstances it does not appear that Osburn and Kniefel were seriously at fault in not discovering McKenna's deception, their conduct can be regarded as constituting negligence. To so conclude does not, however, solve the problem in this case. The conduct of both defendant Zimmerman and defendant O and K Construction Company contributed to the successful forgery—Zimmerman in failing to make inquiry as to McKenna's authority to endorse the checks in question, and O and K Construction Company in failing to examine its records. The question is: Who should bear the loss under these circumstances?

In a considerable number of cases it has been held that the negligence of an employer in detecting the dishonest conduct of his employee does not preclude recovery against the payor of an instrument forged by the employee. In some cases this conclusion is reached on the theory that the employer's negligence is not the proximate cause of the loss; the payor's failure to inform himself as to the employee's authority being regarded as the sole cause of the loss.[9]

---

[9] R. Mars, Contract Co. v. Massanutten Bank of Strasburg, 285 F2d 158 (4th Cir 1960); Carloading & Distributing Co. v. South Side Bank, 224 Mo App 876, 27 SW2d 768 (1930); Britt Co. v. Drugs, Inc., 240 NC 755, 83 SE2d 883 (1954). Cf., Washington Loan and Trust Co. v. United States, 134 F2d 59 (D.C. App 1943) (drawer v. payor bank which had paid on endorsement forged by drawer's employee); B. F. Saul Co. v. Rich Wine and Liquor Co., 120 A2d 208 (D.C. 1956) (payor on forged endorsement v. negligent drawer); Home Indemnity Co. v. State Bank, 233 Iowa 103, 8 NW2d 757 (1943) (assignee of drawer v. bank which had paid on forged endorsement of payee); Greenville Nat'l. Exch. Bank v.

On the other hand, a substantial number of cases recognize that the payor's duty to ascertain the authority of the employee-endorser is not absolute and that the employer's negligence may bar his recovery against the payor.⑨

It seems evident that the O and K Construction Company's negligence was a causal factor contributing to the forgery. Each of the parties had a duty to exercise due care in connection with the checks in question. Each failed to perform its duty. The ques-

Nussbaum, 154 SW2d 672 (Tex 1941) (drawer v. payor bank which had paid on endorsement forged by drawer's employee).

The rule is the same in cases where the drawer of the check sues the drawee bank for charging to the drawer's account money paid on a check bearing the forged endorsement of the payee. Hensley-Johnson v. Citizens Nat. Bank, 122 Cal App2d 22, 264 P2d 973 (1954); Los Angeles Inv. Co. v. Home Sav. Bank, 180 Cal 601, 182 P 293, 5 ALR 1193 (1919); Jordan Marsh Co. v. Nat'l. Shawmut Bank, 201 Mass 397, 87 NE 740 (1909); Bank & Tr. Co. v. Life Ins. Co., 41 Ohio App 261, 179 NE 815 (1931); Coffin v. Fidelity-Phila. Tr. Co., 374 Pa 378, 97 A2d 857, 39 ALR2d 625 (1953); Annotation, 39 ALR2d 641, 647 (1955).

⑨ Kenney v. North Capitol Sav. Bank, 61 F2d 521 (D.C. App 1932) (payee's negligence in knowingly allowing his employee to use a rubber stamp to endorse checks in blank estopped him from denying the employee's authority to receive cash for checks); Fidelity & Casualty Co. v. First Nat. Bank & T. Co., 71 ND 415, 1 NW2d 401 (1941) (principal's failure to inform bank after he knew of agent's defalcations prevented him from asserting lack of authority); Hartford A. & I. Co. v. Bear Butte Bk., 63 SD 262, 257 NW 642 (1934) (payee's actions in permitting employee to use a stamp containing an unqualified endorsement and in permitting him to collect accounts in cash or by check was a failure to exercise ordinary care and created an apparent authority in the employee). Cf., Kansas City, Memphis & Birmingham R. R. Co. v. Ivy Leaf Coal Co., 97 Ala 705, 12 So 395 (1892) (suit by payee v. drawer to recover amount of check which payee's employee had diverted for his own purposes. Payee's practice of allowing its employee to cash such checks prevented it from asserting want of authority); Morris v. Hofferberth, 81 App Div 512, 81 NYS 403 (1st Dept), affirmed, 180 NY 545, 73 NE 1127 (1903) (suit by payee to charge drawer for money due on account. The account had been paid to payee's employee by check, the proceeds of which were appropriated by the employee. Held: Because payee's employee had managerial powers, an apparent authority was created).

tion is how to allocate the loss under such circumstances. The conduct of each could be described in terms of negligence. Applying the accepted rule in other negligence cases, the defendant construction company would be barred from recovery because of its contributory negligence. But, it is not necessary or desirable to extend the doctrine of contributory negligence beyond its present scope and there are special reasons why we should not do so in the law of commercial paper.

■ The pattern for decision in cases such as the one before us is found in § 3-406 of the Uniform Commercial Code which was adopted by the enactment of Oregon Laws 1961, Ch 726, § 73.4060, to be effective on September 1, 1963. That section (Or Laws 1961, Ch 726, § 73.4060; UCC § 3-406) provides as follows:

> "Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business."

Although this section is not operative until September 1, 1963, it expresses the legislative view as of the time of its enactment. There is no existing Oregon statute or adjudicated case which announces a contrary principle.[®] As we have already indicated the cases in other jurisdictions are in conflict. We are,

---

[®] ORS 71.023 recognizes that a person whose signature is forged may be "precluded from setting up the forgery or want of authority," but it does not explain, as does Oregon Laws 1961, Ch 726, § 73.4060 (to become effective September 1, 1963), the principles governing the application of the rule of preclusion.

therefore, free to adopt the principle which, in our opinion, will comport with the needs of the business community in dealing with commercial paper under circumstances such as we have here. We believe that Section 3-406 of the Uniform Commercial Code expresses the appropriate principle. We therefore adopt it. We believe that it is particularly appropriate to do so because it conforms to the view taken, at least tentatively, by the 1961 Legislative Assembly in adopting Oregon Laws 1961, Ch 726 with a postponed effective date.

It is apparent that this section requires a weighing process in choosing between the owner of the forged instrument and the payor in allocating the loss. Translating the section in terms of the factual situation before us, the O and K Construction Company is not precluded from asserting McKenna's lack of authority unless two conditions exist: (1) that O and K Construction Company's negligence "substantially contributes" to the making of the unauthorized signature[7] and, (2) that Zimmerman made payment on the instrument in good faith "and in accordance with the reasonable commercial standards of the * * * payor's business."[8]

The requirement that the negligence "substantially

---

[7] The Official Code Comment, § 3-406:1 states: "It should be noted that the rule as stated in the section requires that negligence 'substantially' contribute to the alteration," [or lack of authority]. The comment further notes that "no attempt is made to specify what is negligence, and the question is one for the court or the jury on the facts of the particular case."

[8] The Official Code Comment, § 3-406:1 states: "The section protects parties who act not only in good faith (Section 1-201) but also in observance of the reasonable standards of their business. Thus any bank which takes or pays an altered check which ordinary banking standards would require it to refuse cannot take advantage of the estoppel."

contributes" to the making of the unauthorized signature is necessary to satisfy the test of factual causation; it is the equivalent of the "substantial factor" test applied in the law of negligence generally. See Restatement, Torts § 433, p. 733 (Supp 1948); Prosser on Torts, § 44, pp. 218-223 (2d ed 1955).

There was sufficient evidence to establish the negligence of the O and K Construction Company in failing to check its records and that this negligence substantially contributed to the making of the unauthorized signatures (at least with respect to those checks which were cashed after there was sufficient time for the company to examine its records and discover the depletion of its funds).[9]

This leaves for our consideration the conduct of Zimmerman in cashing the checks. Defendant O and K Construction Company is not precluded from recovery unless Zimmerman's conduct was "in accordance with the reasonable commercial standards" of its business.

■■ Ordinarily the customary practices of a business must be established by evidence. However, it has been judicially recognized in many adjudicated cases that one who cashes a check endorsed by an agent has

---

[9] Cf., Detroit Piston Ring Co. v. Bank, 252 Mich 163, 233 NW 185, 75 ALR 1273 (1930) (depositor's failure to exercise ordinary care in examining returned checks will relieve drawee bank of liability for all payments made after fraud reasonably should have been discovered); Scott v. First Natl. Bank, 343 Mo 77, 119 SW2d 929 (1938) (drawer v. drawee bank to recover money paid from drawer's account on forged endorsement of payee; drawer recovered on first 15 checks but was precluded by negligence on last 25). See generally, Allocation of Losses from Check Forgeries Under the Law of Negotiable Instruments and the Uniform Commercial Code, 62 Yale L J 417 (1953); Kessler, Forged Indorsements, 47 Yale L J 863 (1938).

the duty to inquire as to the agent's authority to make the endorsement.[10] We can, therefore, take judicial notice of this duty to make inquiry as a part of the "reasonable commercial standards" of a business. As we have already indicated, the duty to inquire is not absolute; the payor may rely upon the apparent authority of the agent or may assert an estoppel against the principal upon some other ground. We have already stated that there was not sufficient evidence to establish apparent authority. Zimmerman attempts to establish such authority by evidence that McKenna frequently was in the company of Osburn or Kniefel in Zimmerman's Store; that McKenna had authority to purchase for the construction company items in the store which were charged to the construction company's account; that he had authority to disperse funds from the petty cash account; that he was in charge of the office approximately 85% of the time, and that he had authority to receive payments on debts owed to the company, as well as to deal generally with people who called at the office. This conduct would not entitle a reasonable man to assume that McKenna had the authority to endorse the construction company's commercial paper. It seems quite evident that Zimmerman's employees cashed these checks not because they relied upon any appearance of McKenna's authority but because they

---

[10] "Power to indorse and negotiate commercial papers is not implied from an express authority to transact other business for the principal unless such power be necessary to execute the express authority." Embden State Bank v. Schulze, 49 ND 777, 193 NW 481 (1923); Anderson, Uniform Commercial Code § 3-404:2, p. 629 (1961). "A third person dealing with a purported agent should communicate with the principal to verify the agent's authority to sign."

See cases cited at note 4, *supra*, holding that because of a payor's duty to verify a purported agency the principal's negligence was not a proximate cause of the loss.

lulled themselves into a false inference, i.e., they apparently assumed that, because McKenna was entrusted with some authority to handle the construction company's business, he had the authority to endorse checks. The cases establish that this is not a reasonable inference.

In testing Zimmerman's conduct by the standard of ordinary commercial practice, it is to be noted that the checks were not cashed by McKenna in connection with any purchase of items in the store on behalf of the construction company. McKenna received the whole amount of the check. Moreover, the amounts paid to him were substantial, including several checks for $300 or more.[①]

Ordinarily, it is the usual practice for a company to deposit checks received by it and to pay for its expenditures by checks drawn on its own account. There was nothing about the character of the O and K Construction Company to warrant an assumption by Zimmerman or his employees that these large amounts of cash were needed to carry on the construction company's business. Had Zimmerman's exercised the degree of prudence customary in their business McKenna's unusual practice of calling for cash would have indicated to Zimmerman that something may have been wrong in McKenna's management of the company's financial affairs.

It is argued that, since no complaint was made by the construction company after the checks were cashed, Zimmerman was led to believe that McKenna's practice was authorized. Under the circumstances, it would have been more reasonable to infer that McKenna had devised a scheme to cover his defalcations.

---

[①] The evidence discloses three checks for $300.00, together with checks for the following amounts: $359.88, $307.00 and $405.00.

■ We hold that, as a matter of law, Zimmerman did not make payment of the checks in accordance with the reasonable commercial standards of his business.

We have accepted the statement in Oregon Laws 1961, Ch 726, § 73.4060 as the guiding principle in disposing of this issue in the case. However, ample support for the position we take may be found in cases which reach a similar conclusion without benefit of an expression of legislative policy. Where the payor's negligence consists of his failure to ascertain the authority of the agent who forges the endorsement of his principal, the great weight of authority holds that the principal's negligence does not bar him from recovery. The leading case on the subject, *California Stucco Co. v. Marine Nat. Bank*, 148 Wash 341, 268 P 891, 67 ALR 1531 (1928), holds that, in the absence of actual or apparent authority, the negligence of the principal in failing to supervise his employees, resulting in the forgery, is not a defense to an action against the payor. The court, quoting from *Standard Steam Specialty Co. v. Corn Exchange Bank*, 220 NY 478, 116 NE 386 (1917), said that " '[t]he stringent rules of agency and the arbitrary rules of the law of negotiable paper alike protect the principal from such unauthorized acts.' "[28] More frequently the rationale is in terms of proximate cause; the principal's negligence in supervising his dishonest employee is not regarded as the proximate cause of a loss arising out of the payor's failure to ascertain the agent's authority.[29]

In some of the cases it is explained that the negligence of the principal, to be a causative factor, must relate to the creation of an appearance of authority

[28] California Stucco Co. v. Marine Nat. Bank, 148 Wash 341 at 345, 268 P 891, 892, 67 ALR 1531, 1534 (1928).

[29] See cases cited *supra*, note 4.

in the agent.[⑭] It would seem more accurate to say that, although the principal's negligence is a causal factor contributing to the loss (reasonable care in supervising his dishonest employee would have prevented it), the payor's negligence outweighs that of the principal in the usual case and he should, therefore, be required to bear the loss.[⑮] This analysis, recognizing the negligence of both parties as causative factors, would bar the principal in an action against the payor, if the doctrine of contributory negligence were applied.[⑯] We have indicated above

[⑭] R. Mars, Contract Co. v. Massanutten Bank of Strasburg, 285 F2d 158 (4th Cir 1960); Hensley-Johnson v. Citizens Nat. Bank, 122 Cal App2d 22, 264 P2d 973 (1954); Jordan Marsh Co. v. Nat'l. Shawmut Bank, 201 Mass 397, 87 NE 740 (1909); Greenville Nat'l. Exch. Bank v. Nussbaum, 154 SW2d 672 (Tex 1941).

[⑮] It appears that, in some of the cases, the exclusion of the principal's negligence is simply another way of saying that the payor's duty to ascertain the agent's authority is absolute in the absence of ostensible authority created in the agent by the principal.

[⑯] It is probable that courts which treat the payor's negligence as the sole proximate cause do so in order to escape the doctrine of contributory negligence in this class of cases. *Compare,* Home Indemnity Co. v. State Bank, 233 Iowa 103, 146, 8 NW2d 757, 782 (1943) ("It is not a question of comparative negligence. The appellee cannot relieve itself by showing its good faith or its exercise of care") *and* American Sash & Door Co. v. Commerce Trust Co., 332 Mo 98, 110, 56 SW2d 1034, 1038 (1932) ("It is not simply a question of using due care and of offsetting negligence against contributory negligence") *with* Union Tool Co. v. Farmers Etc. Nat. Bk., 192 Cal 40, 47, 218 P 424, 427, 28 ALR 1417 (1923) ("Assuming that the plaintiff was negligent * * * the depositary bank may not escape liability for the payment of amounts paid on forged checks unless it has itself been free from negligence.").

See also, Shepard & Morse Lumber Co. v. Eldridge, 171 Mass 516, 527-28, 51 NE 9, 68 Am St Rep 446, 41 LRA 617 (1898) ("The doctrine of contributory negligence as a defence to actions of tort is now of most frequent application, but we have been referred to no instance in which it has been held applicable to actions upon commercial paper. * * * Nothing could more completely unsettle commercial dealings than to extend that doctrine to suits brought by holders of commercial paper against other parties thereto.").

that we would not extend the contributory negligence doctrine to this type of case. It is apparent that Oregon Laws 1961, Ch 726, § 73.4060 is based upon the same assumption because it permits a negligent principal to recover against a payor who fails to make payment of the instrument in accordance with the reasonable commercial standards of the payor's business.

In the ordinary case it seems proper that the negligent payor, rather than the negligent principal, should bear the loss caused by an agent's unauthorized endorsement of his principal's check. An important factor supporting this conclusion is the relative ease with which the payor, having knowledge of the agency, can ascertain the agent's authority, as compared with the difficulty with which an employee's dishonesty may be detected by his employer. The employer must overcome the obstacles which the employee devises for the very purpose of making it difficult to detect the defalcations.[20] Certainly under the circumstances of the present case, it was more reasonable for the officers of the O and K Construction Company to assume that their employee was honest than it was for Zimmerman to assume that he had the authority to endorse checks and receive payment in cash for no ostensible corporate purpose.[21]

---

[20] See Corker, Risk of Loss from Forged Indorsements, 4 Stan L Rev 24, 30 (1951) ("The party with the best opportunity to avoid the loss should bear it").

[21] Shepard & Morse Lumber Co. v. Eldridge, 171 Mass 516, 528, 51 NE 9, 68 Am St Rep 446, 41 LRA 617 (1898) (employer "has the right to assume that his clerk will not commit a crime * * *""); Detroit Piston Ring Co. v. Bank, 252 Mich 163, 178, 233 NW 185, 190, 75 ALR 1273 (1930) (relying "implicitly upon the honesty and faithfulness of a clerk, whom they had no reason to suspect of dishonesty * * * we do not think * * * should operate as an estoppel of the plaintiff"); Shipman v. Bank of State of New York, 126 NY 318, 329, 27 NE 371, 373 (1891)

We hold that, because of defendant Zimmerman's negligent failure to act in accordance with the reasonable commercial standards of its business, the defendant O and K Construction Company, although negligent, is not precluded from recovering upon the forged checks. Oregon Laws 1961, Ch 726, § 73.4060 indicates that the payor's failure to act in accordance with reasonable commercial standards might bar him from setting up the owner's negligence no matter how gross it might be.[20] It is not necessary for us to decide whether the statute will be so interpreted.[21] In the present case the negligence of the O and K Construction Company was clearly outweighed by that of Zimmerman.

We hold that, under these circumstances, Zimmerman cannot rely upon the construction company's negligence to bar the latter's recovery. We reach this

---

(reposing confidence in an employee who is in fact dishonest does not estop plaintiff from asserting his employee's lack of authority); Welsh v. German American Bank, 73 NY 424, 430 (1878) ("the fact that plaintiff entrusted the checks to his clerk * * * made him no more responsible than if he had entrusted them to an expressman").

[20] Cf., R. H. Kimball v. R. I. Hosp. Nat. Bank, 72 RI 144 48 A2d 420, 426 (1946) (the burden is upon the drawee bank who has paid on a forged endorsement and must establish its freedom from negligence *before* it can raise the issue of its depositor's negligence), noted in 14 U Chi L Rev 705 (1947); 47 Colum L Rev 677 (1947); 60 Harv L Rev 643 (1947). But cf., Clay Products Co. v. Natl. Bk. of Portsmouth, 78 Ohio App 271, 69 NE2d 653 (1946).

[21] See Jordan Marsh Co. v. Nat'l. Shawmut Bank, 201 Mass 397, 87 NE 740 (1909) (depositor's negligent failure to discover endorsements of payees forged by its employee on 170 checks in a five year period did not cause drawee bank's payment to fraudulent payee); Prudential Ins. Co. v. Nat. Bank of Commerce in New York, 227 NY 510, 125 NE 824, 15 ALR 146 (1920) (plaintiff, through failure to exercise even slight care, failed to discover a long series of payees' endorsements which had been forged by its employee. Held: A jury question as to [1] whether plaintiff's conduct was negligent and [2] if so, whether this conduct contributed to defendant's payment of the checks.)

conclusion upon a de novo examination of the record, this being a proceeding in equity. The same conclusion would be permissible had this been an action at law because, as we have indicated, Zimmerman's failure to act in accordance with reasonable commercial standards can be declared as a matter of law.

We turn now to a consideration of the trial court's allowance of attorney's fees and costs and disbursements to the plaintiff. Defendant O and K Construction Company argues that the trial court erred in holding that plaintiff was entitled to relief by way of interpleader and that, therefore, plaintiff was not entitled to attorney's fees.

■■ The right to interplead is contested in this case principally upon the ground that the plaintiff bank was liable to defendant O and K Construction Company in conversion or for money had and received, and that, since this independent liability existed, interpleader would not lie. It is clear that when negotiable paper has been transferred by means of a forged endorsement the collecting bank is liable to the owner of the paper unless there is some basis in estoppel or negligence which precludes the owner from asserting this liability. However, if plaintiff had paid O and K Construction Company and it was later decided that the company was precluded from recovery against Zimmerman, plaintiff would have had to pay Zimmerman and then seek restitution against O and K Construction Company. It is precisely circumstances such as these which warrant the allowance of interpleader in modern practice.[28] We hold that interpleader was proper in the case at bar.[29]

---

[28] First Nat'l. Bank v. Noble et al, 179 Or 26, 168 P2d 354, 169 ALR 1426 (1946).

[29] For a discussion of interpleader generally see Chafee, Modernizing Interpleader, 30 Yale L J 814 (1921).

128

■■■■ When interpleader is allowed ordinarily the plaintiff is entitled to an award of a reasonable attorney's fee and reasonable costs and disbursements.[20] This is true even though the plaintiff would have been subject to an action by one or both of the interpleaded parties and the interpleader suit is brought simply to determine which of the two parties is entitled to recover. Recovery is permitted whether the proceeding is regarded as a "pure" bill of interpleader or in the nature of a bill of interpleader.[21] However, where the plaintiff, through his own fault, has placed himself in a position necessitating interpleader to avoid double vexation he is not entitled to attorney's fees.[22] Although plaintiff in the present case is technically a converter of the checks in question, there was no fault on its part in receiving the checks for collection and deposit to Zimmerman's account. We hold, therefore, that plaintiff is entitled to attorney's fees and costs and disbursements. The amount allowed by the trial court was reasonable.

12. Where attorney's fees and costs and disbursements are allowed they must ultimately be borne by the losing party brought into the interpleader proceedings.[23] The O and K Construction Company is, therefore, entitled to be credited with the amount deposited by plaintiff, and in addition it is entitled to a judgment against defendant Zimmerman for the

---

[20] First Nat'l. Bank v. Noble, *supra;* Niedermeyer, Inc. v. Fehl, 153 Or 656, 57 P2d 1086 (1936); Baker L. & T. Co. v. Portland Co., 141 Or 524, 6 P2d 36, 18 P2d 599 (1931); Annotation, 48 ALR2d 190 (1956).

[21] Niedermeyer, Inc. v. Fehl, *supra.*

[22] Annotation, 48 ALR2d 190, 214 (1956).

[23] Globe Indemnity Co. v. Puget Sound Co., 154 F2d 249 (2d Cir 1946); Lucco v. Treadwell, 127 So2d 461 (Fla 1961); Central Pipe Line Co. v. Hutson, 401 Ill 447, 82 NE2d 624 (1948).

amount which was deducted from the fund to reimburse plaintiff for its attorney's fees and its costs and disbursements.

The O and K Construction Company is also entitled to recover from defendant Zimmerman interest on the amount of each of the checks from the date of conversion in each instance.[20] Each party shall bear his own costs on appeal.

Reversed and remanded.

## ON REHEARING

---

[20] Abrams v. Rushlight, 157 Or 53, 69 P2d 1063, 111 ALR 1292 (1937).

Submitted on respondent Zimmerman's petition for rehearing.

Jack L. Hoffman, Portland, submitted a brief for petitioner.

Before ROSSMAN, J., Presiding, and WARNER, PERRY, SLOAN, O'CONNELL, GOODWIN and LUSK, Justices.

PETITION DENIED.

O'CONNELL, J.

Defendant Ada Zimmerman petitions the court for a rehearing. The petition is denied. However, several matters are presented in the petition which prompt us to clarify our former opinion. We held that O and K Construction Company was entitled to recover interest on the amount of each of the checks from the date of conversion in each instance. The date was not specified. The O. and K Construction Company's cross-complaint against plaintiff prays for interest from a specified date with respect to each of the 26 checks for which recovery was sought against the plaintiff. Similarly, the cross-complaint against Zimmerman and the plaintiff with respect to the other four checks designates the date from which interest is to run. The date specified was, in each instance, subsequent to the

date indicated on the back of the check showing the exercise of dominion and control by the bank and, of course, subsequent to the conversion of the checks in each case by Zimmerman.

Our former opinion is clarified to provide that interest is recoverable from the date specified in the cross-complaint. Contrary to petitioner's contention, the sum claimed is liquidated. The evidence did not establish that any of the appropriated moneys were returned to the O and K Construction Company. Plaintiff was a converter of the checks owned by O and K Construction Company. We do not believe that the filing of the interpleader suit should absolve it from liability in this respect, which would include the liability for interest from the date of conversion. Cf., Annotation, 15 ALR2d 473, 479 (1951). The defense proposed by Gresham State Bank was tendered to and accepted by Zimmerman. We regarded this as putting in issue the liability of Zimmerman for the interest alleged in the cross-complaint against the bank for the reason that Zimmerman was liable on its endorsement to the plaintiff, the endorsement warranting the checks to be genuine. ORS 71.066 (N.I.L. § 66); Brannon, Negotiable Instrument Law (Beutel's 7th ed 1948) pp. 965-66 and cases cited therein. Cf., *Peterson v. Thompson,* 78 Or 158, 151 P 721, 152 P 497 (1915). The proceeding being in equity, it was within the power of this court to adjust the liability of all of the parties before it, including the derivative liability of Zimmerman for the interest for which the bank was liable as a converter.

We held that the O and K Construction Company was entitled to be credited with the amount of the funds deposited by plaintiff, in addition to a judgment against Zimmerman for the amount awarded as plain-

tiff's attorney fees and costs and disbursements. Petitioner contends that this would require Zimmerman to pay the amount awarded to plaintiff twice. It should be unnecessary to say that this was not intended. The obvious purpose of the direction was to make O and K Construction Company whole by permitting recovery of the amount deposited (less the attorney's fees and costs allowed to plaintiff) and, to the extent the deposit was deficient as a result of the allowance made to plaintiff, permit recovery against Zimmerman.

The petition is denied.