Argued and submitted January 5, reversed August 7, 1979

RIEDEL et ux,
*Plaintiffs,*
*v.*
FIRST NATIONAL BANK
OF OREGON et al, *Respondents,*
*and*
PORTLAND GENERAL ELECTRIC
COMPANY, *Appellant.*
(TC A7611-16311, SC 25613)

598 P2d 302

David N. Hobson, Portland, argued the cause for appellant. With him on the briefs was Phillips, Coughlin, Buell, Stoloff & Black, Portland.

Ridgway K. Foley, Portland, argued the cause for respondent. With him on the brief were Miller, Anderson, Nash, Yerke & Wiener, Bruce A. Rubin, Souther, Spaulding, Kinsey, Williamson & Schwabe, and John E. Hart, Portland.

Before Denecke, Chief Justice, and Holman, Howell and Lent, Justices.

LENT, J.

**LENT, J.**

The parties are agreed that this appeal involves actions on cross claims made by First National Bank (FNB) against U. S. National Bank (USNB) and Portland General Electric Company (PGE), and by USNB against PGE in the nature of indemnity for the recovery of attorney fees allegedly authorized by ORS 74.2070(3). Both banks incurred attorney fees in defending a cause brought against them by plaintiffs herein. The plaintiffs, Mr. and Mrs. Riedel, brought an action against PGE, USNB and FNB charging all three defendants with recklessness and seeking general and punitive damages.

The parties are agreed on the following: On August 28, 1976, plaintiff wife made out a check in the sum of $37.50 on plaintiffs' joint checking account at FNB, payable to the Teamsters Union, Local #162. The check was intended as payment of plaintiff husband's union dues. Thereafter, on September 8, PGE received the check in its Oregon City office. The plaintiffs denied having anything to do with delivering the Teamster check to PGE, although there was evidence that a friend of plaintiffs delivered the check to PGE to be applied on plaintiffs' bill. PGE did not notice that the check was made out to the Teamsters and endorsed the back of the check with PGE's stamp and credited plaintiffs' account. PGE then deposited the check with USNB, which endorsed the check with its stamp containing the letters "p.e.g.," which letters mean "prior endorsements guaranteed." No one at USNB is instructed to check to see if the endorsements on checks processed by it are proper, except that 500 checks are "fanned through" at a time by the bank personnel. Thereafter the check was delivered to FNB for payment, and FNB debited plaintiffs' account. The process is done mostly by computer and no one at FNB checked to see if the check was properly endorsed. As a result of the fact that the subject check was not delivered to the Teamsters, husband had to pay an additional $100 to reinstate him in the union.

[287]

Plaintiffs alleged recklessness on the part of all three defendants in cashing a check not properly endorsed and sought general damages in the sum of $1,000 and punitive damages in the sum of $10,000. In their respective answers, each defendant admitted that the check did not bear the endorsement of the Teamsters but denied any recklessness and affirmatively alleged contributory negligence on the part of plaintiffs in delivering the check to PGE. In addition, FNB filed cross claims against USNB and PGE, and USNB filed a cross claim against PGE.

At the conclusion of plaintiffs' case, the court granted the motions for involuntary nonsuit of both FNB and USNB on the grounds that the banks had both acted in a commercially reasonable manner in handling the check and, therefore, as a matter of law, there was no negligence on the part of either bank, despite failure to look for or discover the improper endorsement on the check. At the conclusion of the trial, the court found PGE and plaintiffs each 50 percent negligent, and awarded a judgment to plaintiffs in the sum of $125. Thereafter the court, on the basis of briefs and affidavits, entered a judgment on the cross claims awarding FNB a judgment against PGE and USNB for attorney fees in the sum of $2,757.05 and awarding USNB a judgment against PGE for attorney fees in the sum of $4,183.71.

The court had deferred hearing the cross claims until after the plaintiffs' case was concluded. The cross claims were drawn on the theory that PGE was liable to the banks for any judgment obtained against the banks by plaintiffs, because under the law PGE warranted the validity of the check to the banks; however, since the plaintiffs did not get a judgment against either bank, the banks sought to recover from PGE only their attorney fees incurred in the case.

The parties are agreed that the questions presented on appeal are: Are the judgments awarded by the court supported by the pleadings in the cross claims?

Does ORS 74.2070(3) provide for recovery of attorney fees as an "expense" in a breach of warranty case? Under the allegations of the complaint, did PGE have a duty to defend the banks? We hold that ORS 74.2070(3) does not authorize an award of attorney fees in Oregon and that PGE had no duty to defend the banks on the record in this case. Accordingly, we do not reach the first question presented.

■ The banks contend that the award of attorney fees is authorized under ORS 74.2070(3):

> "The warranties and the engagement to honor set forth in subsections (1) and (2) of this section arise notwithstanding the absence of indorsement or words of guaranty or warranty in the transfer or present-ment and a collecting bank remains liable for their breach despite remittance to its transferor. Damages for breach of such warranties or engagement to honor shall not exceed the consideration received by the customer or collecting bank responsible plus finance charges and *expenses* related to the item, if any." (Emphasis added)[1]

The trial judge relied upon this section and *Gresham State Bank v. O & K Con. Co.,* 231 Or 106, 370 P2d 726, 372 P2d 187, 100 ALR2d 654 (1962), as authority in awarding attorney fees. In doing so he was influenced by the decision in *Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 491 F2d 192, reh den (8th Cir 1974).

---

[1] It is doubtful whether this subsection has any applicability in this case, for ORS 74.2070 is concerned with the warranties of the transferor(s) of an "item" and the part of subsection (3) with which we are confronted is concerned with "expenses related to the item." In this case neither the plaintiff nor either bank was attempting to collect or defend against collection of the amount of the item. The plaintiff was seeking *consequential* damages, and the banks were each asserting the right to be reimbursed for any judgment obtained by plaintiff against a bank. We need not decide the applicability of the subsection, however, for we dispose of the claim for attorney fees on other grounds.

We further note that the adjective "finance" could be construed to apply to both of the following nouns "charges" and "expenses." If so, attorney fees would not seem to be "finance expenses." PGE does not so argue, however, and the official commentary indicates that the section is meant to be read as if it said "expenses and finance charges."

The statutory language is silent as to attorney fees. The only "legislative" support for awarding attorney fees under this statute comes from the Official Comment to this section of the Uniform Commercial Code:

> "* * * The 'expenses' referred to in this phrase may be ordinary collecting expenses and in appropriate cases could also include such expenses as attorneys fees. * * *."

Comment 5 to UCC § 4-207(3). We assume, without deciding, that this is an "appropriate" case within the meaning of the comment (also assuming that the code section is applicable at all). Our attention has been directed to only two decisions concerning the award of attorney fees under this section: *Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* and *Security Bank & Trust Co. of Miami, Okla. v. National Bank of Commerce of Tulsa,* 9 UCC Rep. Serv. 291 (1971). Both cases involved "collection of an item." *See,* footnote 1, *supra.* In *Bagby* the Court of Appeals, applying Missouri law, allowed attorney fees. In the other case the Oklahoma Supreme Court denied attorney fees under that state's law.[2] These cases are of no help to us in a decision which we find must turn upon the *judicial policy of this state*[3] in relation to the awarding of attorney fees in actions at law.

That policy is expressed as well as in any other place in *Hughes v. Bembry,* 256 Or 172, 177-178, 470 P2d 151 (1970):

> "We have adopted a narrow policy on the allowance of attorney fees and held that they will not be

---

[2] The banks question the authoritativeness of the Oklahoma case because the case is not officially reported. *See,* Rules of the Supreme Court of Oklahoma, 12 Okla Stat Ann Ch 15, App 2, 95, New Policy on Publication of Appellate Opinions, adopted September 24, 1973. This is not important, for we place no reliance on the decision.

[3] We are not unmindful of the injuction of ORS 71.1020 to construe the Uniform Commercial Code "[t]o make uniform the law among the various jurisdictions." We observe that it is already not uniform as between Missouri and Oklahoma, and we are not apprised of any Oregon legislative history to indicate the Oregon legislature was aware of Comment 5 or intended to endorse it.

allowed unless *expressly authorized* by a statute or a contract. * * *." (Emphasis added)

Given the historical antipathy of this court to awarding attorney fees in the absence of express authority and the legislature's presumed awareness thereof[4] we find it reasonable to conclude that had the legislature of this state meant that attorney fees could be awarded under ORS 74.2070(3), it would not have left that authority to be found only in the Commissioners' Comment. The statute does not expressly authorize an award of attorney fees, and in this respect we adhere to our historical position. We hold, therefore, that ORS 74.2070(3) does not authorize an award of attorney fees in this action at law.

The banks further contend that in *Gresham State Bank v. O & K Con. Co.,* 231 Or 106, 127-129, 370 P2d 726, 372 P2d 187, 100 ALR2d 654 (1962), this "court allowed attorney fees in a declaratory judgment [*sic*] where no statute or contract provided for recovery of the fees. The banks should recover here under this authority." Our research does not disclose that case to be a declaratory judgment proceeding. The Abstract of Record found in Oregon Briefs, Vol. 1667, describes the cause as "SUIT IN EQUITY AND BILL OF INTERPLEADER." The complaint contained allegations commonly found in bills of interpleader, and the prayer was for a decree requiring the defendants to interplead and for reasonable attorney fees and all court costs and expenses to be paid out of the stake paid into the registry of the court. At 231 Or 127-129 cited to us by the banks this court speaks of the case as being one in interpleader. On the issue of the trial court's allowance of attorney fees to plaintiff, this court said:

"When interpleader is allowed ordinarily the plaintiff is entitled to an award of a reasonable attorney's fee and reasonable costs and disbursements. This is true even though the plaintiff would

---

[4] *Compare, State v. Waterhouse,* 209 Or 424, 436, 307 P2d 327 (1957); 73 Am Jur 2d 368, Statutes § 164; 82 CJS 541, Statutes § 316.

have been subject to an action by one or both of the interpleaded parties and the interpleader suit is brought simply to determine which of the two parties is entitled to recover. Recovery is permitted whether the proceeding is regarded as a 'pure' bill of interpleader or in the nature of a bill of interpleader. However, where the plaintiff, through his own fault, has placed himself in a position necessitating interpleader to avoid double vexation he is not entitled to attorney's fees. Although plaintiff in the present case is technically a converter of the checks in question, there was no fault on its part in receiving the checks for collection and deposit to Zimmerman's account. We hold, therefore, that plaintiff is entitled to attorney's fees and costs and disbursements. The amount allowed by the trial court was reasonable." (Footnotes omitted)

The appellant (unsuccessful claimant below) did not contest the award of attorney fees as such but only the right of the plaintiff bank to maintain a bill of interpleader. Neither did the cross-appellant (successful claimant below) contest the award; rather she contended the appellant should be required to pay to her an amount to make the stake whole.

Two main points are to be made about that case. There was no dispute among the parties as to whether the plaintiff was entitled to attorney fees as such, and the cause was one in interpleader. We find that case inapposite to the issue in this action.[5]

---

[5] Working back from authority cited in *Gresham State Bank v. O & K Con. Co.,* 231 Or 106, 127-129, 372 P2d 187, 100 ALR2d 654 (1962), we find a line of cases awarding attorney fees in interpleader without any discussion of authority for so doing or any recognition that there is a split of authority in the United States concerning the matter. *See, First Nat'l Bank v. Noble, et al,* 179 Or 26, 168 P2d 354, 169 ALR 1426 (1946); *Niedermeyer, Inc. v Fehl,* 153 Or 656, 57 P2d 1086 (1936); *Baker L. & T. Co. v. Portland Co.,* 141 Or 524, 6 P2d 36, 18 P2d 599 (1931); *Thomas Kay Woolen Mill Co. v. Sprague,* 259 F 338 (Ore 1919); *North Pacific Lumber Co. v. Lang,* 28 Or 246, 42 P 799 (1895). *Compare,* Annotation, 48 ALR2d 190 (1956) noting the split of authority among the states. The allowance of attorney fees in this line of cases in equity in interpleader indicates little other than a historical accident.

The question remains whether the trial court's judgment for the respective banks is to be supported upon some other theory. The banks assert that they are entitled to affirmance on the theory that PGE had a duty to defend them and is liable for breach of that duty in an amount measured by the reasonable attorney fees they expended in defending themselves.[6]

We first look to whether this claim is properly before us. The trial judge did not purport to award *damages measured by the amount of attorney fees* expended or incurred by the banks in defending themselves. Instead he awarded attorney fees themselves upon his holding that they were authorized by ORS 74.2070(3) and *Gresham State Bank v. O & K Con. Co., supra.* He made no reference to alternative theories of common law indemnity asserted by the banks in their memoranda or to breach of a duty to defend.[7] Apparently being satisfied with the judgment, the banks did not cross-appeal. Neither did they contend by an assignment of error that the trial judge should have found in their favor on those alternative

---

Attorney fees have been allowed by this court in the absence of express contractual or statutory authority in *Deras v. Myers,* 272 Or 47, 535 P2d 541 (1975), and *Gilbert v. Hoisting & Port. Engrs.,* 237 Or 130, 384 P2d 136, 390 P2d 320, cert den, 376 US 963 (1964). In those cases we grounded the award upon the inherent authority of a court of equity.

[6] FNB filed three answers: Original, amended and second amended. In none of them did it allege that it tendered defense to PGE or to USNB. Despite that in a trial memorandum FNB alleged that it had tendered defense to USNB and that USNB had "tendered in turn to PGE." That the alleged tender and tender in turn were made appears in supplemental memoranda filed by the respective banks, and we shall treat FNB's case as if it had pleaded and proven tender.

USNB in its amended answer did plead tender and rejection thereof by PGE.

Some of the banks' attorney fees were incurred before tender and rejection, but we need not examine that in light of our disposition of the entire claims.

[7] It is true that he mentioned PGE's "refusal to accept responsibility for this unfortunate affair in the beginning" but as the banks state in their brief that discussion in his "Decision" "is really an explanation for the size of the attorney fees award and not of the substantive right to it."

[293]

theories. We conclude, however, that the defendants did assert in their brief in this court those theories to sustain the judgment below, and we shall treat them as properly before us. *Compare, Artman v. Ray,* 263 Or 529, 534, 501 P2d 63, 502 P2d 1376 (1972), and cases there cited.

All parties have drawn our attention to cases in which we have discussed the duty to defend as depending upon the allegations of the complaint. Most of those cases involve whether an insurer was required to defend. Of course, the insurer's duty to defend must be found in the terms of the contract of insurance. The allegations of the complaint are then compared with the terms of the policy. If the complaint, without amendment, asserts allegations that, if true, "may impose liability for conduct covered by the policy, the insurer is put on notice of the possibility of liability and it has a duty to defend." *Oakridge Comm. Ambulance v. U. S. Fidelity,* 278 Or 21, 24, 563 P2d 164 (1977). We are not here concerned with a duty arising out of a contract to defend, but the cases are useful by way of analogy.

In this case PGE's duty to defend the banks arises if it has breached warranties under ORS 74.2070 and if the allegations of the complaint, if true, disclose a breach of such warranties.[8] The complaint alleges that PGE (USNB's "customer," ORS 74.1040(1)(e)) obtained payment of the check from USNB (a "collecting bank," ORS 74.1050(4)), which in turn obtained payment from FNB (the "payor bank," ORS 74.1050(2)). Plaintiffs' complaint charges each defendant with recklessness (negligence as plaintiffs went to trial) for its own part in that chain of events. Each bank in its various pleadings not only denied its own negligence but also denied the charge of negligence made by plaintiffs against PGE.

[8] We are not concerned with any issue as to whether USNB may have had some contractual duty greater than the statutory warranty by reason of its "p.e.g." endorsement, and express no opinion on that.

[294]

■ The banks contend, however, that the sequence of events described in the plaintiffs' complaint demonstrate that PGE breached its warranties under ORS 74.2070 to both banks. We quote pertinent parts of the statute:

"(1)  Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor *who in good faith pays or accepts the item* that: * * *

"* * * * *

"(2)  Each customer and collecting bank who transfers an item and receives a settlement or other consideration for it warrants to his transferee and to any subsequent collecting bank *who takes the item in good faith* that: * * *." (Emphasis added)

If all of the allegations of the complaint are taken to be true, they do not establish that either or both of the banks paid, accepted or took the check in good faith. In order to maintain an action against PGE for breach of warranty each bank would have to plead and prove its good faith. That each bank recognized this is demonstrated by looking to its cross claim against PGE. In its three successive cross complaints against PGE and USNB, FNB alleged its own good faith. Both PGE and USNB denied that allegation. In its successive cross complaints against PGE, USNB alleges its own good faith, and PGE denies the allegations.

We hold that in this state of the pleadings and under the pertinent statute, PGE had no duty to defend the banks until the issue of good faith should be resolved favorably to the banks by trial of that issue.

For some reason not quite clear to us the banks take a fall back position that even if PGE had no duty to defend them, there may be an independent duty to pay a judgment secured by the plaintiffs against the bank in these circumstances. Assuming that to be true, we find it to have no application. The banks' respective motions for judgment of involuntary nonsuit against

plaintiffs were allowed, and the banks had judgment against plaintiffs for the banks' cost and disbursements.

■ The banks also urge that they are entitled to prevail against PGE on a theory of common law indemnity. The short answer is that neither bank has pleaded or proven that it has discharged a duty to plaintiffs with respect to these consequential damages, which as between the bank and PGE should have been discharged by PGE. *See, U. S. Fire Ins. Co. v. Chrysler Motors,* 264 Or 362, 365-366, 505 P2d 1137 (1973); Restatement, Restitution, § 76. *Compare, Kamyr, Inc. v. Boise Cascade Corp.,* 268 Or 130, 519 P2d 1031 (1974).

The disposition of these cross claims on the merits make it unnecessary to consider important pleading contentions seriously urged by PGE. Had we decided those issues in favor of PGE we should not have had to reach the merits of the claims that ORS 74.2070(3) authorizes attorney fees in this situation. We believed it more important to inform bench, bar and business community of our holding that the statute does not authorize such fees than to resolve the pleading issue. Should interested parties believe that the statute should authorize attorney fees, that case may be pressed at the legislature.

The judgment is reversed.